HORIZON HOLDINGS, L.L.C.,
et al., Plaintiffs,

v.

GENMAR HOLDINGS, INC.,
et al., Defendants.

No. 01–2193–JWL.

United States District Court,
D. Kansas.

May 30, 2002.

---

5. *See* Certificate of Compliance with D.C.COLO.LR 7.1 [filed April 19, 2001].

Floyd R. Finch, Jr., Nicole T. Bock, Blackwell, Sanders, Peper, Martin, LLP, George A. Hanson, Todd M. McGuire, Stueve, Helder, Siegel, LLP, Kansas, MO, for plaintiff.

Timothy K. McNamara, Harlan D. Burkhead, Tedrick A. Housh, III, Rosalee M. McNamara, Lathrop & Gage L.C., Kansas, MO, Thomas Tinkham, Holly S.A. Eng, Judith Williams–Killackey, Dorsey & Whitney, LLP, Minneapolis, MN, for defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is Plaintiff's Motion to Compel Production of Documents (doc. 40). For the reasons stated below, Plaintiff's Motions will be granted in part and denied in part.

### Factual Background

In 1997, Horizon Marine, L.C. ("Horizon Marine") began doing business as an aluminum boat manufacturer in Junction City, Kansas. ·At this point in time, Plaintiff Goeffrey Pepper ("Pepper"), one of several investors who started the company, became President of Horizon Marine, Pepper's daughter, Cassandra O'Tool, became the company's human resources manager and Cassandra O'Tool's husband, John O'Tool, became the company's Director of Manufacturing.

In late 1998, Defendant Genmar Manufacturing of Kansas, L.L.C. (Genmar Kansas)

acquired Horizon Marine. Genmar Kansas subsequently changed the name of the company to Horizon Holdings, L.C. ("Horizon Holdings") and changed the brand name of the boats from "Horizon" to "Nova." At the time of the acquisition, Pepper became president of Genmar Kansas, Pepper's daughter Cassandra O'Tool became director of human resources for Genmar Kansas and Pepper's son-in-law John O'Tool became director of manufacturing for Genmar Kansas. All three of these individuals signed employment agreements with Genmar Kansas. On or about April 5, 2000, Genmar Kansas terminated the employment of Pepper, Cassandra O'Tool and John O'Tool.

In this lawsuit, Plaintiffs Horizon Holdings and Pepper allege contract and tort claims against Genmar Holdings, Inc. ("Genmar Holdings"), Genmar Industries, Inc. ("Genmar Industries") and Genmar Kansas. With respect to terms and conditions of employment after the acquisition, Plaintiff Cassandra O'Tool alleges discrimination and retaliation against Genmar Kansas and Pepper and John O'Tool allege retaliation against Genmar Kansas. In their answer, all three Defendants assert a counterclaim against Plaintiffs Horizon Holdings and Geoffrey Pepper for failing to disclose significant warranty problems with Horizon Marine's boats.

### Discussion

In the pending motion, Plaintiffs seek responses to various document requests to which Defendants object. The Court will discuss the disputed requests in the order presented by the parties.

• Requests 4 and 5

Requests 4 and 5 seek documents relating to other claims of sex and pregnancy discrimination or retaliation in the last five years—those filed with federal or state agencies, those filed with the courts or those lodged internally with the companies themselves. Defendants object to these requests on grounds that they are overbroad/not reason-

ably calculated to lead to the discovery of admissible evidence and unduly burdensome.

• Overly Broad; Not Reasonably Calculated to Lead to Discovery of Admissible Evidence

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter ... that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

▉ When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Sheldon v. Vermonty,* 204 F.R.D. 679, 690 n. 7 (D.Kan. 2001) (citations omitted). Similarly, a party resisting discovery on grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *EEOC v. Kansas City Southern Railway,* 195 F.R.D. 678, 680 (D.Kan.2000). When the relevancy of propounded discovery is not apparent, however, its proponent has the burden to show the discovery relevant. *Williams v. Board of County Commissioners,* 192 F.R.D. 698, 705 (D.Kan.2000) (citing *Pulsecard, Inc. v. Discover Card Serv., Inc.,* 168 F.R.D. 295, 309 (D.Kan.1996)).

▉ Pursuant to Rule 26(b)(1), the Court finds the documents requested appear on their face to be relevant to Plaintiff Cassandra O'Tool's claim of gender and pregnancy discrimination and the claims of retaliation asserted by all three of the individual defendants. The Court's finding is grounded in the possibility that responsive documents may *lead* to the discovery of admissible evidence.[1]

---

1. The Court notes that the touchstone to the relevancy of documents requested is not that such discovery will result in evidence which is, or even may be, admissible at trial, but rather that such discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Because the Court finds the discovery sought appears relevant on its face, Defendants now have the burden to establish lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Sheldon v. Vermonty*, 204 F.R.D. at 690 n. 7 (citations omitted). Notably, Defendants do not discuss relevance in their briefing, but instead argue that "[i]f the Court orders production, it should reasonably limited [sic] to sex and retaliation claims against the alleged decisionmaker and for only a period of three years prior to the time the discriminatory conduct was alleged to have occurred." Defendants' Memorandum in Opposition at p. 3 (doc. 56).

As a preliminary matter, and with respect to limiting the request to the actual decision maker, the Court notes Defendants initially defended the employment claims at issue in this litigation by asserting that Mr. Oppegaard—the President and Chief Executive Office of Genmar Holdings—was the individual who made the decision to terminate Mr. Pepper, Ms. O'Tool and Mr. O'Tool. *See* Letter from Genmar General Counsel, Ex. 2 to Plaintiffs' Reply Brief (doc. 58); Defendants' Position Statement to the Equal Employment Opportunity Commission, Ex. 3 to Plaintiffs' Reply Brief (doc. 58). In later deposition testimony, however, Mr. Oppegaard stated he was not involved in the termination decision; the decision maker was Dave Vidgal, Genmar Holdings Senior Vice-President of Operations. Oppegaard Depo., Ex. 4 to Plaintiffs' Reply Brief (doc. 58).

Given the confusion about who made the termination decisions, as well as the fact that both Mr. Oppegaard and Mr. Vidgal are executive officers with Genmar Holdings, the Court finds company-wide responses to the referenced requests are appropriate.[2]

With respect to the issue of temporal scope, Plaintiffs assert Defendants' course of unlawful discriminatory and retaliatory conduct in this case began in December 1999 and continued through the early part of April 2000. The time period specified in Requests 4 and 5 is "the last five years", 1997 to present. Thus, the requested time period is approximately three years prior and two years subsequent to Defendants' alleged discriminatory and retaliatory conduct.

In the context of employment discrimination cases, courts have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence; thus, courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period. *See, e.g., James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir.1979) (four years prior to liability period reasonable); *EEOC v. Kansas City Southern Railway*, 195 F.R.D. 678, 679–680 (D.Kan.2000) (allowing discovery for three years prior and one year after liability period); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D.Minn.1997)(allowing discovery into the period two years after termination); *Lyoch v. Anheuser–Busch Cos.*, 164 F.R.D. 62, 67 (E.D.Mo.1995) (four years prior to liability period reasonable); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D.Pa.1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 62–63 (D.N.J.1985) (allowing discovery for a period of two years after employment terminated); *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53 62 (E.D.Pa.1979) (five years prior to liability period reasonable); *Cormier v. PPG Indus.*, 452 F.Supp. 594 (W.D.La.1978) (five years prior to liability period reasonable).

Keeping in mind that the scope, including the temporal scope, of discovery through interrogatories and requests for production of documents is particularly broad in discrimination cases, the Court is convinced that limiting the scope of Requests 4 and 5 to a period of three years prior to the time the

---

**2.** Defendant Genmar Industries is an indirect subsidiary of Genmar Holdings and is also the parent company of Genmar Kansas.

discriminatory conduct was alleged to have occurred and two years after the discriminatory conduct was alleged to have occurred is reasonable and not overly broad.

● Unduly Burdensome

■ Defendants also assert producing the requested documents imposes an undue burden. As the party resisting discovery, Defendants have the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *See Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 332 (D.Kan.1991). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.

Defendants have submitted no explanation, let alone an affidavit or other proof, demonstrating that responding to these Requests would impose an undue burden. The Court will not speculate that the requested discovery causes undue burden; therefore, Defendant's objection with regard to undue burden will be overruled.

● Request 38

■ Request 38 seeks "[a]ny and all documents relating to any judicial or administrative proceedings that Genmar [Holdings, Genmar Industries or Genmar Kansas] ha[ve] been involved in as a party or witness." Defendants object to this request on grounds that it is overbroad/not reasonably calculated to lead to the discovery of admissible evidence and seeks attorney work product and information protected by the attorney-client privilege.

Based on the unlimited scope of the request in terms of time and subject matter, the Court finds Request No. 38 overly broad on its face; thus Defendants' objection based on overbreadth is valid. *See EEOC v. Kansas City Southern Railway*, 195 F.R.D. at 680 (citations omitted).

■ Despite having a valid objection to a request, however, a party generally is still required to answer a request to the extent it

is not objectionable. *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D.Kan.1996). An answer will not be required, however, when the request is overly broad on its face unless adequate guidance exists as to what extent the request is not objectionable. *Id.* (citing *Nelson v. Telecable of Overland Park*, No. 95–2007–GTV, 1996 WL 111250, at *2 (D.Kan. Feb.29, 1996)). The parties here have provided insufficient guidance for the Court to determine the extent to which the request is not objectionable; thus, Defendants will not be required to respond to this request.[3]

● Request 6

Request 6 seeks handbooks or other documents describing the personnel policies and procedures in effect from January 1, 1999 through present for Genmar Kansas, Genmar Holdings and Genmar Industries. Although Defendants have produced the referenced polices and procedures on behalf of Genmar Kansas, Defendants object to producing the requested documents for Genmar Holdings and Genmar Industries on grounds that the documents are confidential in nature and are not reasonably calculated to lead to the discovery of admissible evidence.

● Confidentiality

As a preliminary matter, confidentiality does not equate to privilege. *Hill v. Dillard's*, No. 00–2523–JWL, 2001 WL 1718367, *4 (Oct. 9, 2001) (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)). Although information is not shielded from discovery on the sole basis that the information is confidential, a party may request the court enter a protective order pursuant to Fed.R.Civ.P. 26(c) as a means to protect such confidential information. While the decision whether to enter a protective order is within the Court's discretion, *see Thomas v. International Bus. Mach.*, 48 F.3d 478, 482 (10th Cir.1995), Rule 26(c) nevertheless requires that the party seeking the protective order provide "good cause" for the order. Specifically, Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice

---

3. Because the Court has sustained Defendants' objections on grounds of overbreadth, the Court finds it unnecessary to discuss the issue of privilege with regard to Request 38.

requires to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense." The party seeking a protective order has the burden to demonstrate good cause. *Sentry Ins. v. Shivers,* 164 F.R.D. 255, 256 (D.Kan.1996).

In determining whether good cause exists to issue a protective order that prohibits partial or complete dissemination of documents or other materials obtained in discovery, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and very serious injury.'" *Zapata v. IBP, Inc.,* 160 F.R.D. 625, 627 (D.Kan.1995) (quoting *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 480 (S.D.N.Y.1982)) (internal quotations omitted). The moving party must also make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

■ Defendants have neither requested a protective order permitting them to withhold the discovery at issue in the event the Court grants Plaintiffs' Motion to Compel or shown good cause for such protection. Thus, the Court overrules Defendants' objections based on confidentiality concerns with respect to Request 6.

● Not Reasonably Calculated to Lead to Discovery of Admissible Evidence

Defendants assert Request 6 is not relevant because Plaintiffs never worked for Genmar Holdings or Genmar Industries and the terms and conditions of their employment was controlled by individual employment agreements with Genmar Kansas.

■ In support of their request for corporate-wide policies, Plaintiffs respond by arguing that, although they worked at a facility operated by Genmar Kansas, they reported and were ultimately accountable to individual officers and management officials of Genmar Holdings and Genmar Industries. Plaintiffs further point out that Defendants cited to Genmar Industries and Genmar Holdings employee handbooks as part of their position statement submitted to the EEOC in relation to Plaintiffs' claims. The Court is persuaded by Plaintiffs' arguments and finds the Request 6 relevant on its face.

Because the Court finds the discovery sought appears relevant on its face, Defendants now have the burden to establish lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Sheldon v. Vermonty,* 204 F.R.D. at 690 n. 7 (citations omitted). Defendants' sole argument in this regard is that Plaintiffs were never employed directly by Genmar Holdings or Genmar Industries; Defendants do not argue in their brief that disclosure of the requested information would be harmful to them in any way.

The Court rejects Defendants' argument based on lack of any potential harm and the fact that Defendants readily concede that at least some of the employment decisions at issue in this lawsuit were made by executive officers of Genmar Holdings and Genmar Industries.

● Request 7

In Request 7, Plaintiffs seek documents related to Defendants' investigation of Plaintiffs' complaints of discrimination and retaliation. Because Defendants apparently have agreed to produce all non-privileged responsive documents, the Court finds the dispute related to Request 7 is moot.

● Request 9 and 10

Request 9 seeks "[a]ny and all documents identifying all personnel hired and terminated at the [Genmar Kansas] plant between January 1999 to the present" and Request 10 seeks "[a]ny and all documents identifying the seniority levels for all employees of [Genmar Kansas] from January 1999 to present." Plaintiffs state the requested documents are relevant to demonstrate that similarly situated or comparable employees were treated differently than Plaintiffs. Defendants object on grounds that the requests are vague, ambiguous, compound, overly broad, not rele-

vant and call for disclosure of confidential information.

 The Court finds both of these requests overly broad, vague and ambiguous on their face. The Court's finding in this regard is based on the fact that the requests seek "any and all" documents containing the identified information and do not sufficiently target the goal stated by Plaintiffs: obtaining information regarding employees who may have been similarly situated to them.

As already noted by the Court, a party will not be required to respond to an overly broad discovery request unless adequate guidance exists as to what extent the request is not objectionable. *Mackey v. IBP, Inc.*, 167 F.R.D. at 197 (citing *Nelson v. Telecable of Overland Park*, No. 95–2007–GTV, 1996 WL 111250, at *2 (D.Kan. Feb.29, 1996)). Again, the parties here have provided insufficient guidance for the Court to determine the extent to which the requests are not objectionable; thus, Defendants will not be required to respond to these requests.[4]

● Requests 27 and 35

Request 27 seeks "[t]he complete personnel files, including employment contracts, performance reviews and wage histories, for Ty Arneson, Mark Magers, Gary Palmer, Melissa Marshall, Randy Pearce, Misty Pearce, Joe Sexton, Rachel Owen and Steve Zodrow" and Request 35 seeks "[t]he complete personnel files of the individuals who replaced Geoffrey Pepper, Cassandra O'Tool and John O'Tool, including but not limited to resumes, applications and performance reviews." Plaintiffs again state the requested documents are relevant to demonstrate that similarly situated employees were treated differently than Plaintiffs were treated.

Defendants disagree and object to providing the requested information on grounds that the requests are not reasonably calculated to lead to the discovery of admissible evidence and call for confidential and private information of third parties.

 With respect to Request 27, the Court agrees with Defendants and finds the request is not relevant on its face. More specifically, Plaintiffs fail to demonstrate how the individuals identified in Request 27 are similarly situated to Plaintiffs and/or how employment decisions regarding such individuals could create an inference of discriminatory or retaliatory conduct.[5]

 With respect to Request 35, however, the Court finds the documents requested may be relevant to demonstrate an inference of discrimination. The request is narrowly limited to those individuals who replaced the individual Plaintiffs. Because Plaintiffs allege to have been terminated for inadequate job performance and lack of qualifications and/or experience, qualifications and other personnel information regarding those employees who replaced Plaintiffs may lead to the discovery of admissible evidence with regard to these issues.

With respect to the confidentiality of these documents, the Court again notes that confidentiality does not equate to privilege and Defendants have neither requested a protective order permitting them to withhold the discovery at issue in the event the Court grants Plaintiffs' Motion to Compel or shown good cause for such protection. *See Hill v. Dillard's*, No. 00–2523–JWL, 2001 WL 1718367, *4 (Oct. 9, 2001) (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)). Thus, the Court overrules Defendants' objections based on confidentiality concerns with respect to Requests 27 and 35.

● Request 16 and 42

 In Requests 16 and 42, Plaintiffs seek balance sheets and other financial information from Genmar Holdings and Genmar Industries. Plaintiffs contend this information is relevant to Plaintiffs' claims for puni-

---

4. Based on these findings, the Court finds it unnecessary to address Defendants' confidentiality objections.

5. Although Plaintiffs argue Defendants have stated various employment decisions allegedly were based on whether an individual employee worked pursuant to an employment contract and/or was an investor in Horizon Marine, Plaintiffs do not identify whether any of the individuals listed in Request 27 worked pursuant to an employment contract and/or were an investor in Horizon Marine.

tive damages in this litigation. Plaintiffs further contend the size and financial strength of Defendants is relevant to the commercial claims advanced in this litigation, including Defendants' intent to purchase a competing boat company in order to put such company out of business. Defendants reject Plaintiffs' arguments, maintaining the information requested is not relevant at this stage of the proceeding.[6]

As a preliminary matter, the Court is unpersuaded by Plaintiffs' relevancy argument with respect to Defendants' intent to sabotoge a competing boat company; the request—on its face—is not sufficiently related to the stated reason for requesting the discovery and the Court cannot readily see an alternative correlation.

With regard to the relevancy of financial information to the issue of punitive damages, this Court has held that "[i]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages." *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, No. Civ. A. 00–2099–CM, 2001 WL 395397, at \*2 (D.Kan. Apr. 11, 2001) (citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, Civ. A. No. 94–2395–GTV, 1995 WL 625962, \*3 (D.Kan. Oct.5, 1995)). "The party seeking discovery generally 'need not establish a *prima facie* case on the issue of punitive damages before it can obtain pretrial discovery of [the other party's] financial statements and tax returns." *Id.* (emphasis in original) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D.Kan.1990)). A respondent's interest in the nondisclosure and confidentiality of its financial records can usually "be

adequately protected by a protective order" restricting dissemination of the documents and the information within. *Id.* To discover a party's financial condition in light of a claim for punitive damages, requesting parties generally must show the claim for punitive damages is not spurious. *Id.*

Plaintiffs appear to have alleged sufficient facts to claim punitive damages against Defendants.[7] Further, Defendants have made no showing that Plaintiffs' punitive damage claims are spurious. The Court therefore finds the financial information requested relevant to the issue of punitive damages and finds Defendants' arguments regarding prematurity to be without merit. With regard to confidentiality, the parties will be directed to meet and confer regarding an appropriate protective order to protect the confidentiality of the documents at issue and will be further ordered to attempt to submit a joint proposed Order to the Court for approval. If the parties are unable to agree upon a joint proposed Order on or before June 10, 2002, the parties shall individually submit their own proposed Order on that date and the Court will issue an appropriate Order;

- Request 44

In Request 44, Plaintiffs seek documents related to the production of Crestliner and Ranger products at the facility in Little Falls, Minnesota. In support of their request, Plaintiffs state the documents will demonstrate whether, as they allege in their Complaint, Defendants fraudulently concealed the fact that they intended—to the detriment of Plaintiffs—Genmar Kansas to be a "dumping" ground for production of low profit margin boats.

Defendants object to producing the requested documents on grounds that either

---

6. Although Defendants originally lodged objections alleging the requests were vague, ambiguous, overly broad and unduly burdensome, Defendants do not refer to these objections in their briefing; thus the Court assumes such objections have been abandoned.

7. The facts of this case differ from those presented in *American Maplan Corp. v. Heilmayr*, 203 F.R.D. 499 (D.Kan.2001). In *Maplan*, although Judge Lungstrum deferred until after trial on liability the discovery of financial data relating

to punitive damages, the issue of the amount of punitive damages was bifurcated from the issue of liability for such damages pursuant to K.S.A. 60–3702(a) (if trier of fact determines that punitive damages shall be allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded). Unlike *Maplan*, many of the claims for punitive damages here are made pursuant to federal discrimination statutes and do not require bifurcation at trial.

they do not exist or are confidential and "not relevant to the commercial issues presented in this case."[8] Defendants' Memorandum in Opposition at p. 6 (doc. 56). Defendants further argue that "Plaintiff Pepper's right to earn-out under the Purchase Agreement is based solely upon the amount of production at the [Genmar Kansas] facility in Junction City, Kansas, not the production of Crestliner or Ranger boats at other locations .... Plaintiffs' contention that the Crestliner or Ranger production was 'dumped' on the [Genmar Kansas] facility is belied by the fact that such production was negotiated by the parties and contemplated in the earn-out for Mr. Pepper." *Id.* (emphasis in original).

Pursuant to amended Rule 26(b)(1), the Court finds the documents requested appear on their face to be relevant to Plaintiffs' claims of breach of contract, fraudulent misrepresentation, breach of the covenant of good faith and fair dealing and tortious interference with business relations. The Court's finding is grounded in the possibility that responsive documents may *lead* to the discovery of admissible evidence with respect to the referenced claims. Although, as Defendants assert, Plaintiff Pepper's right to earn-out under the Purchase Agreement was based solely upon the amount of production at the Genmar Kansas facility in Junction City, Kansas, evidence regarding the production of Crestliner or Ranger boats at other locations may very well lead to the discovery of admissible evidence with regard to whether low profit margin production was "dumped" on the Genmar Kansas facility, regardless of whether such production was negotiated by the parties and contemplated in the earn-out for Mr. Pepper.

● Request 48

In Request 48, Plaintiffs seek documents regarding Defendants' interest in acquiring other entry level product lines. In

support of their request, Plaintiffs allege "Defendants made a number of fraudulent statements regarding their reasons for wanting to purchase Horizon. Documents regarding Defendants' interest in acquiring such a product line are certainly relevant to Defendants' fraudulent intent in the transaction that is the subject of this lawsuit." Plaintiffs' Memorandum in Support of Motion to Compel at p. 11 (doc. 41).

Defendants object to producing the requested documents on grounds that "[a]part from documents related to the instant transaction, defendants' earlier acquisition strategies with regard to companies other than Horizon Marine are not reasonably calculated to lead to the discovery of admissible evidence."[9] Defendants' Memorandum in Opposition at p. 6–7 (doc. 56).

Upon consideration of the arguments presented, the Court finds the documents requested appear on their face to be relevant to Plaintiffs' claims of fraudulent misrepresentation. Again, the Court's finding is grounded in the possibility that responsive documents may *lead* to the discovery of admissible evidence with respect to the fraudulent misrepresentation claim.

● Request 49

In Request 49, Plaintiffs seek documents related to financing of the purchase of Horizon and financing for the operation of the Genmar Kansas facility. In support of their request, Plaintiff state the referenced documents "may disclose the motivation and persons or entities responsible for certain decisions made before and after the purchase of Horizon." Plaintiffs' Memorandum in Support of Motion to Compel at p. 11 (doc. 41).

Defendants object to producing the requested documents on grounds that the request is not reasonably calculated to lead to the discovery of admissible evidence.[10] Defendants' Memorandum in Opposition at p. 7

---

**8.** Although Defendants originally objected on grounds of confidentiality and undue burden, Defendants do not refer to these objections in their briefing; thus the Court assumes such objections have been abandoned.

**9.** Although Defendants originally objected on grounds of confidentiality and undue burden, Defendants do not refer to these objections in

their briefing; thus the Court assumes such objections have been abandoned.

**10.** Although Defendants originally objected on grounds of confidentiality and undue burden, Defendants do not refer to these objections in their briefing; thus the Court assumes such objections have been abandoned.

**218**

(doc. 56). The Court agrees—simply put, the correlation between how Defendants financed their purchase of Horizon and the claims or defenses asserted in this matter is not readily apparent to the Court.[11] Thus, Defendants will not be required to respond to Request 49.

● Sanctions

Plaintiffs seek to recover fees and expenses incurred in connection with this motion to compel. Fed.R.Civ.P. 37(a)(4)(C) provides that "the court may ... apportion reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Upon review of the circumstances presented, justice requires each party be responsible for their own costs and expenses.

### Conclusion

Based on the discussion above, it is hereby ordered that

● Plaintiffs' Motion to Compel is granted to the extent that Defendants shall fully respond to Requests 4, 5, 6, 35, 16, 42, 44, 48

● Plaintiffs' Motion to Compel is denied to the extent that Defendants shall not be required to respond to Requests 38, 9, 10, 27, 49;

● Plaintiffs's Motion to Compel is denied as moot with regard to Request 7.

● The parties shall meet and confer regarding an appropriate protective order to protect the confidentiality of documents and shall attempt to submit a joint proposed Order to the Court for approval. If the parties are unable to agree upon a joint proposed Order on or before June 10, 2002, the parties shall individually submit their own proposed Order on that date and the Court will issue an appropriate Order; and

● Plaintiffs' Motion for Sanctions is denied.

IT IS SO ORDERED.

---

**11.** Notably, Plaintiffs fail to identify the "certain decisions" to which they refer; thus, the Court is unable to ascertain any correlation between "the motivation and persons or entities responsible for certain decisions made before and after the purchase" and the claims or defenses asserted in this case.