GENERAL ELECTRIC CAPITAL CORP., Plaintiff,

v.

LEAR CORP., Defendant, Third Party Plaintiff and Third Party Counterdefendant,

v.

Excel Laminates, Inc. and David Seitter, Third Party Defendant and Third Party Counterclaimant.

No. 01–2172–GTV.

United States District Court, D. Kansas.

May 20, 2003.

William D. Beil, Jason M. Hans, Randall E. Hendricks, Rouse, Hendricks, German, May, PC, Lisa A. Epps, Scott J. Goldstein, Eric L. Johnson, David C. Seitter, Spencer, Fane, Britt & Browne, Kansas City, MO, for Excel Laminates, Inc. and David Seitter.

Craig T. Kenworthy, Swanson, Midgley, LLC, Kansas City, MO, Christopher T. Koch, Southfield, MO, Don R. Lolli, Dysart, Taylor, Lay, Cotter & McMonigle, P.C., Kansas City, MO, for Lear Corp.

John K. Power, Husch & Eppenberger, Kansas City, MO, for General Electric Capital Corp.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is a Motion to Compel (doc. 98) filed by third party defendants and counterclaimants Excel Laminates and David Seitter (collectively "Excel") seeking production of documents and answers to interrogatories from defendant and third party Plaintiff Lear Corporation ("Lear"). Excel also moves the Court to hear oral argument on its Motion (doc. 108). The Court does not believe that oral argument is necessary and therefore will deny the request.[1]

Upon consideration of the arguments presented, and for the reasons stated below, Excel's Motion to Compel will be granted.

### Brief Factual Background

Among other issues, this case involves counterclaims for breach of contract and fraud arising out of a business relationship between Excel and Lear. Excel maintains it contracted with Lear to supply Lear laminated body cloth. Lear disputes the existence of any enforceable contract with Excel in this regard.

Excel served its first set of Interrogatories and Requests for Production of Documents to Lear on January 17, 2003. Lear's re-

---

1. *See* D. Kan. Rule 7.2 (requests for oral argument on motions are granted "at the discretion of the court").

sponses to the discovery originally were due on February 17, 2003. Lear obtained an extension of time to respond to the discovery requests until March 10, 2003 and subsequently served its responses on that date. Excel is dissatisfied with the responses submitted, asserting Lear lodged invalid objections to much of the discovery and, in many cases, failed to produce many documents or provide complete answers. As a result, Excel filed this motion in order to compel Lear to appropriately respond to the discovery requests at issue.[2]

### Discussion

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter ... that is relevant to the claim or defense of any party." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [3]

■ When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[4] Similarly, a party resisting discovery on the basis that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face.[5]

■ Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[6] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[7]

With these standards in mind, the Court now will address each of the individual issues presented by Excel in its Motion.

### I. Requests for Production of Documents

**A. Exhaustive Search—Request for Documents 1–6, 8–11, 17, 23, 25 and 26**

■ With regard to the referenced requests, Excel maintains Lear arbitrarily limited its search to files and documents within the custody and control of only three employees. Excel alleges Lear failed to search for documents created or received by all of the other Lear employees who had a business relationship with Excel or who were otherwise involved in the business relationship between Excel and Lear.

Lear denies it arbitrarily limited its search to three employees and argues Excel's allegations are speculative and incorrect. Notwithstanding this argument, Lear goes on to state that it is contacting appropriate personnel at Lear to determine if additional responsive documents exist and is in the process of reviewing files and documents located at the Lear facility Mexico. Lear maintains these searches are ongoing and require a reasonable period of time to complete.

Given Lear's response here, the Court will treat this aspect of Excel's motion as uncontested and order Lear to search for responsive documents created or received by all Lear employees who had a business relationship with Excel or who were otherwise involved in the business relationship between Excel and Lear.

---

2. Although Excel maintains it attached as Exhibit A copies of all relevant discovery requests and Lear's responses, there were no attachments to Excel's pleadings.

3. Fed.R.Civ.P. 26(b)(1).

4. *Scott v. Leavenworth Unified Sch. Dist. No. 453,* 190 F.R.D. 583, 585 (D.Kan.1999).

5. *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 686 (D.Kan.2000).

6. *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 442, 445 (D.Kan.2000).

7. *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001) (citations omitted).

Lear will be ordered to produce responsive documents by May 30, 2003. Lear does not dispute that it first received these formal requests for production of documents in mid-January 2003. A May 30, 2003 deadline to complete the search and produce responsive documents provides Lear with a four and one-half month window for the task, a window of time the Court believes is reasonable.

### B. Overbroad Objections—Request for Documents 1–6, 8–11, 15–20, 22–23

 Excel maintains Lear's objections based on the overly broad nature of these requests is without merit. More specifically, Excel states this case involves a claim that Excel gave Lear a "rock bottom price" to purchase laminate based on an agreement that Lear would purchase all laminate it needed from Excel. Excel alleges Lear then shopped competitors using Excel's rock bottom price. Based on these facts, Excel argues the referenced requests are not overly broad, but are appropriately limited to Lear's internal and external communications regarding Lear's solicitation and/or purchase of laminates from Excel and other companies during the relevant time period.

In response to Excel's argument, Lear states as follows:

> Although Lear raised an overbroad objection to several document requests, Lear provided available documents. However, the objection is required because of the wording used by Excel. Lear has over approximately 160,000 employees located in several regions of the United States, as well as in Mexico. Accordingly, ... when Excel requests "all documents," ... [i]t would be impossible to ensure that all documents evidencing any communication over a three-year period will be located. Notwithstanding the objection, Lear attempted in good faith to supply the requested documents and agreed in good

faith to contact appropriate Lear personnel a second time.[8]

 The federal discovery rules provide that "request[s] shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity."[9] Moreover, "[r]equests should be reasonably specific, allowing the respondent to readily identify what is wanted."[10] Courts may find requests overly broad when they are "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope."[11]

Lear does not argue in its brief that it is not able to readily identify the documents requested. Neither does Lear argue that it would be unduly difficult to determine which documents fall within the scope of the request. Accordingly, Lear's objections based on overbreadth are without merit.

 Lear also asserts, however, that searching for and locating "**all**" documents in the identified categories is a monumental task based on the number of employees that work for Lear. The Court construes this argument to be one based on undue burden. As the party resisting discovery, Lear has the burden to show facts demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D.Kan.2002) (citation omitted). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.

Beyond noting the number of persons employed by the company, Lear has submitted no explanation, let alone an affidavit or other proof, demonstrating that responding to the referenced discovery requests would impose an undue burden. The Court will not speculate that the requested discovery causes un-

---

**8.** Lear's Memorandum in Opposition to Excel's Motion to Compel (doc. 101) at pp. 3–4.

**9.** Fed.R.Civ.P. 34(b).

**10.** *Western Resources, Inc. v. Union Pacific Railroad,* No. 00–2043–CM, 2001 WL 1718368, *3

(D.Kan. Dec.5, 2001) (quoting *Audiotext Communications v. U.S. Telecom, Inc.,* No. 94–2395–GTV, 1995 WL 18759, at * 1 (D.Kan. Jan.17, 1995)).

**11.** *Id.*

due burden; therefore, Lear's argument in this regard is without merit.

For this reason, and based on Lear's assertion that—notwithstanding any objections lodged—it provided available documents and is contacting employees a second time and attempting in good faith to search for and produce the requested documents, the Court will order Lear to complete its search and produce all responsive documents by May 30, 2003.

### C. Producing Documents Upon Execution of a Protective Order

Excel asserts that in response to Request Nos. 7, 12, 15, 21, 22, Lear indicates it will produce the various documents upon entry of a protective order. Excel maintains that although the protective order subsequently was transmitted to Lear for execution, the documents have yet to be produced.

In response to this argument, Lear notes that on April 4, 2003—one day after Excel filed this motion to compel—it executed the protective order and produced the requested documents. Given Lear's response, the Court will treat this aspect of Excel's motion as uncontested and will grant Excel's motion to compel the referenced documents.

### D. 1998 and 1999 Documents

Excel maintains the documents produced by Lear primarily were from the 2000–2001 time frame. Excel argues the parties' business relationship and many of the key events and circumstances giving rise to the litigation occurred in 1998 and 1999. For these reasons, Excel alleges Lear did not make a good faith search of documents.

Lear denies it did not make a good faith search for the documents requested and argues Excel's allegations are speculative and incorrect. Notwithstanding this argument, Lear goes on to state that it is contacting appropriate personnel at Lear to determine if additional responsive documents exist and is in the process of reviewing files and documents located at the Lear facility Mexico. Lear maintains these searches are ongoing and require a reasonable period of time to

complete. Given Lear's response, the Court will treat this aspect of Excel's motion as uncontested and will grant Excel's motion to compel the referenced documents.

### E. Requests 7, 18–22

Excel asserts the referenced requests ask for documents showing the quantity of laminates purchased from Excel, payments by Lear for those purchases, and the quantity and dollar volume of Lear purchases from other laminate suppliers for 1998, 1999 and 2000. Excel maintains Lear failed to produce any documents showing this information.

In response to Excel's argument, Lear asserts it produced the responsive documents it had available and is searching again for responsive documents. Once again, the Court will treat this aspect of Excel's motion as uncontested and order Lear to complete its search and produce responsive documents by May 30, 2003.

### F. Specific Requests

#### 1. Request 6: Purchasing Department Files

Excel contends Lear failed to produce any documents in response to this request. Lear disagrees, stating it produced Guillermo Zubieta's Excel Binder, Mike Duross' Excel file, Jerry Cave's Excel file and Guillermo Zubieta's Excel e-mails and attachments. Lear argues these documents are from the Purchasing Department and goes on to state that if Excel will narrow its request, a further search will be made.

The Court construes Lear's objection to Request 6 as one based on the overly broad nature of the request. Given the Court's finding above that Lear's objection to Request 6 based on overbreadth is without merit,[12] the Court will grant Excel's motion to compel with respect to Request 6 and order Lear to produce all responsive documents by May 30, 2003.

---

12. *See, supra,* Section I(B).

### 2. Request 15: Personnel Files

Excel seeks the production of personnel files for fifty-one current or former Lear employees who were in some way involved in the business relationship with Excel, or Excel's competitors, concerning the purchase of laminates. Two of the employees are Ed Mahon, Lear in-house General Counsel and Chris Koch, Lear in-house Assistant Counsel and co-counsel in this litigation. Excel argues that information in the personnel files likely will contain information that is relevant on issues such as the employee's position, job responsibility, and bias. Excel also argues the personnel files will contain information that will assist Excel in determining who to depose and will expedite the depositions that are taken.

Lear initially objected to producing these files on grounds that the requests were overbroad and that the request sought documents that were confidential and privileged. Notwithstanding these objections, Lear suggested that if Excel would narrow its request to a particular category of documents within the files, Lear would respond. The parties later conferred regarding this discovery dispute and Lear states that during this conference it offered to have Lear's Human Resources department provide the position and job responsibility of each of the fifty-one identified employees and produce non-privileged documents in their personnel files relating to Excel. Lear noted that it would provide a privilege log for those documents within any of the files for which it claimed privilege. Lear alleges Excel has not responded to this offer.

The Court construes Lear's objection to Request 15 as one based on the overly broad nature of the request. Given the Court's finding above that Lear's objection to Request 15 based on overbreadth is without merit,[13] the Court will address only the confi-

dentiality and privilege arguments asserted by Lear.

 As a preliminary matter, the Court notes that confidentiality does not equate to privilege.[14] Although information is not shielded from discovery on the sole basis that the information is confidential, a party may request the court enter a protective order pursuant to Fed.R.Civ.P. 26(c) as a means to protect such confidential information. It appears from Lear's brief that a stipulated order protecting the confidentiality of documents produced already is in place. Accordingly, the Court overrules Lear's objections based on confidentiality.

 As to Lear's privilege objections, "[p]arties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies."[15] "To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery."[16] "A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof."[17]

Lear has failed to satisfy the requirements cited above with respect to the privilege objections asserted. Thus, if Lear intends to withhold any of the materials requested here based on a claim of privilege, it must provide Excel with a "detailed description of the materials in dispute and ... specific and precise reasons for [its] claim of protection from disclosure."[18] The description should include at least the following information for each such document:

a. A description of the document (i.e. correspondence, memorandum, etc.);

b. Date prepared or date notations made;

c. Date of document (if different from # 2);

---

13. *See, supra,* Section I(B).

14. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.* 209 F.R.D. 208, 213 (D.Kan.2002) (citing *Federal Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)).

15. *ERA Franchise Sys., Inc. v. Northern Ins. Co.,* 183 F.R.D. 276, 278 (D.Kan.1998) (citation omitted).

16. *Id.* at 278–79 (citation omitted).

17. *Id.* (citation omitted).

18. *Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 334 (D.Kan.1991) (citation omitted).

d. Who prepared the document or made notations on the document;

e. For whom the document was prepared and to whom the document was directed;

f. Purpose of preparing the document or making the notations;

g. Number of pages of each document; and

h. Basis for withholding discovery.

Based on this discussion, Lear will be ordered to produce the personnel files requested and provide a detailed log for any documents withheld based on claims of privilege.

### 3. Request 16

This request seeks documents concerning Excel retained by several people identified by name who dealt with Excel on behalf of Lear. Based on the limited number of documents produced in response to this request, Excel alleges Lear did not make a good faith search of documents.

Lear denies it did not make a good faith search for the documents requested and argues Excel's allegations are speculative and incorrect. Notwithstanding this argument, Lear goes on to state that it is conducting a second search to determine if additional responsive documents exist. Lear further states that a privilege log is being prepared for responsive documents withheld based on claims of privilege.

Given Lear's response here, the Court will treat this aspect of Excel's motion as uncontested and order Lear to complete its search and produce responsive documents and/or a privilege log by May 30, 2003.

### 4. Request 18

Lear agreed to produce the purchase orders requested here but states that a reasonable amount of time is needed to complete a search and print and/or copy what is estimated to be several thousand documents from an approximately five year time period.

Given Lear's response here, the Court will treat this aspect of Excel's motion as uncontested and order Lear to complete its search and produce responsive documents by May 30, 2003.

### 5. Request 24

Excel contends Lear did award or would be awarded Lear's laminate business. In this request, Excel seeks documents evidencing that Lear communicated that fact internally or outside the company. Lear objects to this request "as calling for a legal conclusion and assuming facts in dispute." Excel contends this objection is invalid.

In support of its objection, Lear argues the request inappropriately seeks an admission from Lear. Notwithstanding this argument, Lear states it provided responsive documents to the request and is in the process of searching for additional documents responsive to the request.

Given Lear's response here, the Court will order Lear to complete its search and produce responsive documents by May 30, 2003.

## II. Interrogatories

Excel is dissatisfied with the answers to Interrogatories 1–3, 5, 6(c), 6(d), 8–10, asserting Lear lodged groundless objections and failed to provide complete answers. In its responsive briefing, Lear repeatedly states it is still in the process of looking for answers and will provide supplemental responses to all the referenced interrogatories as soon as such answers are found.

Given this responses, the Court will order Lear to complete its search and fully answer the interrogatories by May 30, 2003. Again, Lear does not dispute that it first received these interrogatories in mid-January 2003. Thus, a May 30, 2003 deadline to find information and answer the interrogatories provides a four and one-half months window for the task, a window of time the Court believes is more than reasonable.

Based on the discussion above,

(1) Excel's Request for Hearing (doc. 108) is denied; and

(2) Excel's Motion to Compel (doc. 98) is granted in its entirety and Lear is hereby ordered to complete its search for information, documents and tangible things, answer the referenced in-

terrogatories and produce responsive documents and/or a privilege log by *May 30, 2003.*

IT IS SO ORDERED.