Roberta E. SONNINO, M.D., Plaintiff,

v.

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY, et al., Defendants.

No. CIV.A. 02–2576–KHV–DJW.

United States District Court,
D. Kansas.

March 31, 2004.

Alan R. Kabat, Lynne Ann Bernabei, Bernabei & Katz, PLLC, Washington, DC, Dennis E. Egan, Stephen J. Dennis, The Popham Law Firm, P.C., Kansas City, MO, Gena Elyse Wiltsek, Bernabei & Katz, PLLC, Washington, DC, for Plaintiff.

Douglas S. Laird, Patricia A. Sexton, Polsinelli Shalton & Welte, P.C., Kansas City, MO, John C. McFadden, Kansas City, KS, for Defendants.

### *MEMORANDUM AND ORDER*

WAXSE, United States Magistrate Judge.

Pending before the Court is Plaintiff's Motion to Compel Against All Defendants (doc. 101). For the reasons set forth below, the Court will grant in part and deny in part the Motion.

## I. Introduction and Plaintiff's Claims Against Defendants

Plaintiff is a former Professor of Surgery and Pediatrics at the University of Kansas School of Medicine and formerly held a clinical appointment as Section Chief of Pediatric Surgery at the University of Kansas Medical Center. As Section Chief of Pediatric Surgery, she maintained a clinical practice at the University of Kansas Hospital ("Hospital"). The Hospital is owned by the Defendant University of Kansas Hospital Authority ("Hospital Authority"). Plaintiff also had an employment contract with Defendant Kansas University Surgery Association ("KUSA").

Plaintiff's Second Amended Complaint (doc. 75) alleges several causes of action against the nine Defendants. Plaintiff sues Barbara Atkinson, M.D.; H. William Barkman, Jr., M.D.; Laurence Y. Cheung, M.D.; Irene M. Cumming; Robert Page–Adams; and Kurt P Schropp, M.D., pursuant to 42 U.S.C. §§ 1983 and 1985 for alleged violations of her rights of free speech secured by the First Amendment and her right of due process secured by the Fourteenth Amendment. Plaintiff claims in the Second Amended Complaint that the individual Defendants manufactured false allegations against her, improperly suspended her clinical privileges, reported the suspension to the National Practitioners Data Bank and the Kansas Board of Healing Arts without justification, conducted an improper investigation that had a predetermined outcome, improperly recommended the permanent revocation of her medical staff membership and clinical privileges, and transferred her academic appointment from the Department of Surgery to the Department of Pathology.

The Second Amended Complaint also alleges that the Hospital Authority, the University of Kansas (the "University"), KUSA, and Dr. Cheung violated the Equal Pay Act, specifically, 29 U.S.C. § 206(d), by failing to pay her a salary equal to that of male co-workers performing substantially equal work. She also alleges that these Defendants retaliated against her for complaining about the alleged unlawful pay differential.

In addition, the Second Amended Complaint alleges that the Hospital Authority, the University, and KUSA discriminated against Plaintiff on the basis of her gender and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.[1] Plaintiff claims that said Defendants discriminated against her on the basis of her gender by criticizing and disciplining her, suspending her clinical privileges, and filing a report with the National Practitioners Data Bank, but not doing so for similarly situated male physicians who, allegedly like Plaintiff, had engaged in disruptive conduct or endangered patient care. She claims that said Defendants retaliated against her for engaging in protected activity by pursuing unwarranted corrective actions against her, recommending that her staff membership and clinical privileges be permanently revoked, filing a baseless report with the Kansas Board of Healing Arts, and by transferring her academic appointment from the Department of Surgery to the Department of Pathology.

Plaintiff files the instant Motion to Compel seeking an order compelling Defendants to respond to various First Requests for Production and First Interrogatories.

## II. Analysis

### A. Compelling Responses from Dr. Cheung and the University

#### 1. Timeliness of the Motion to Compel

Plaintiff seeks an order compelling Dr. Cheung and the University to produce documents in response to Plaintiff's First Request for Production of Documents. Dr. Cheung and the University urge the Court deny the Motion to Compel as untimely. The Court agrees that the Motion is untimely as to these two defendants.

D. Kan. Rule 37.1(b) provides that any motion to compel "*shall* be filed and served within 30 days of the default or service of the response, answer or objection which the subject of the motion, unless the time for filing of such motion is extended for good cause shown. Otherwise the objection to the de-

---

1. 42 U.S.C. § 2000e, *et seq.*

fault, response, answer, or objection *shall* be waived." [2]

■ The University served its responses to the First Request for Production on June 11, 2003. Dr. Cheung served his responses to the First Request for Production on July 18, 2003. Pursuant to D. Kan. Rule 37.1(b), any motion to compel responses with respect to the University should have been filed by July 11, 2003, and any motion to compel with respect to Dr. Cheung should have been filed by August 17, 2003. Plaintiff, however, did not file the instant Motion to Compel until September 5, 2003, well outside both of those thirty-day window.

Plaintiff argues in her reply that she has demonstrated good cause to file the Motion to Compel out of time. She asserts that she delayed filing her motion in order to give both the University and Dr. Cheung an opportunity to cure the alleged deficiencies in their respective productions. She also asserts that she delayed filing her motion "based on defendants' repeated promises they would supplement their responses." [3] She claims that her counsel "in good faith actively conferred with defense counsel, both by telephone and by letter on over thirteen occasions, in an effort to secure defendants' voluntary agreement to supplement their responses and thereby save judicial resources." [4]

The record before the Court, however, does not support this claim—at least with respect to the relevant time periods. The record reveals that during the thirty-day period in which Plaintiff should have filed her motion to compel with respect the University, i.e., during the time period June 11—July 11, 2003, Plaintiff's counsel corresponded only once with counsel for the University. [5] On July 10, the second-to-last day of the thirty-day period, Plaintiff's counsel telefaxed a thirteen-page letter to the University's counsel, indicating that she was writing "to notify [counsel] of the serious deficiencies" in the University's responses to the requests for production and asking that the University "immediately supplement" its production. [6] Counsel for Plaintiff and the University had previously agreed to speak on the telephone at 4:00 p.m. that day regarding the University's responses to the requests. According to an e-mail memo sent by the University's counsel to Plaintiff's counsel later in the day on July 10, [7] he did not receive the telefaxed letter until 3:00 p.m. and he did not have adequate time to review the thirteen-page letter prior to the scheduled 4:00 p.m. telephone conference. His e-mail memo indicated that he preferred to respond in writing to the concerns raised in her letter. He also stated in his e-mail memo that he would "try to get back" to her "early next week," [8] which would have been the week of July 14 and outside of the thirty-day period.

Although the record is not clear, it appears that Plaintiff's counsel and the University's counsel did speak at some point in time on July 10. Plaintiff's counsel wrote to the University's counsel on July 15 "to confirm our July 10 telephone conversation, in which [defense counsel] indicated that the University would supplement its responses to plaintiff's discovery requests." [9] However, it does not appear that this was a specific promise to supplement particular discovery responses, as Plaintiff's attorney suggests in her July 15 letter that they speak again on July 17 (outside the thirty-day period) to discuss the deficiencies she had outlined in her July 10 letter and "to discuss which requests the University is willing to supplement." [10]

There is nothing else in the record reflecting discussions, letters, or other communications during the relevant thirty-day time pe-

---

**2.** D. Kan. Rule 37.1(b) (emphasis added).

**3.** Pl.'s Reply (doc. 142) at 24.

**4.** *Id.*

**5.** *See* Ex. 19, attached to Pl.'s Mot. to Compel (doc. 101).

**6.** *Id.*

**7.** *See* Ex. G, attached to Pl.'s Certificate of Compliance (doc. 102).

**8.** *Id.*

**9.** *See* Ex. H, attached to Pl.'s Certificate of Compliance (doc. 102).

**10.** *Id.*

riod. Nor is there anything in the record indicating that the University made "repeated promises" to supplement its responses, promises that Plaintiff reasonably could have relied upon in delaying the filing of a motion to compel. Plaintiff's counsel should not have waited until the thirty-day period had almost expired before communicating with the University's counsel. At the very least, Plaintiff should have filed a motion for extension of time to file a motion to compel directed at the University. The Court therefore holds that Plaintiff has failed to show good cause for filing the Motion to Compel outside of the thirty-day period, and the Court will deny the Motion as untimely as it applies to the University.

The Court will also deny the Motion as untimely as it applies to Dr. Cheung. Again, the Court does not find that Plaintiff has shown good cause for filing the motion out of time. During the thirty-day period in which Plaintiff should have filed her motion as to Dr. Cheung (i.e., July 18—August 17, 2003) the record reveals that Plaintiff's counsel took the following actions. On July 18, 2003, Plaintiff's counsel sent a letter [11] to Dr. Cheung's attorney indicating that she (Plaintiff's counsel) had just received Dr. Cheung's responses and had not been able to review them extensively; however, she noted that his interrogatory answers indicated that Dr. Cheung was in possession of certain calendars that she requested he produce by July 30, 2003. On August 7, 2003, Plaintiff's counsel sent a second letter [12] to Dr. Cheung's counsel outlining the alleged deficiencies in Dr. Cheung's responses and noting that Dr. Cheung had failed to produce any documents in response to the requests for production. She requested that Dr. Cheung immediately produce all responsive documents and supplement his written responses.

There is nothing in the record indicating that Dr. Cheung's counsel promised to provide amended or supplemental responses to the document requests or promised to provide the requested documents. Nor is there any evidence of any other representation by Dr. Cheung's counsel that Plaintiff could have reasonably relied upon in delaying filing her motion. The Court therefore holds that Plaintiff has failed to demonstrate good cause to file the Motion to Compel out of time. Accordingly, the Court will deny the Motion to Compel as to Dr. Cheung.

### 2. Sanctions against Plaintiff

■ The University and Dr. Cheung request that they be awarded the attorney fees that they have incurred in opposing Plaintiff's Motion to Compel. Such sanctions are recoverable under Federal Rule of Civil Procedure 37(a)(4)(B). Under that rule, when a motion to compel is denied, the Court "*shall ... require the moving party or the attorney filing the motion or both of them*" to pay to the party who opposed the motion the reasonable expenses and attorney fees incurred in opposing the motion, "unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." [13]

The Court deems it just and appropriate to award the University and Dr. Cheung the reasonable fees and expenses that they incurred in responding to Plaintiff's Motion to Compel. To aid the Court in determining the proper amount of fees and expenses to be awarded, counsel for the University and Dr. Cheung shall file, within **twenty (20) days** of the date of filing of this Order, a pleading in which they set forth the amount of expenses and attorney fees that the University and Dr. Cheung incurred in connection with responding to the Motion to Compel and an affidavit itemizing those expenses and fees. Plaintiff shall have **twenty (20) days** thereafter to file a response to the affidavit. The Court will then issue a second order, specifying the amount and time of payment.

### B. Compelling Responses from the Hospital Defendants

Dr. H. William Barkman, Irene Cumming, Robert Page–Adams, Dr. Kurt Schropp, and

---

**11.** *See* Ex. 20, attached to Pl.'s Mot. to Compel (doc. 101).

**12.** Ex. 23, attached to Pl.'s Mot. to Compel (doc. 101).

**13.** Fed.R.Civ.P. 37(a)(4)(B) (emphasis added).

the Hospital Authority (collectively referred to as the "Hospital Defendants") served joint responses to Plaintiff's First Requests for Production. Plaintiff seeks an order compelling them to respond to certain of those requests. Plaintiff also seeks an order compelling the Hospital Authority to answer certain interrogatories contained in Plaintiff's First Set of Interrogatories, which were served on the Hospital Authority.

### 1. The Individual Hospital Defendants' qualified immunity objections

■ Dr. Barkman, Ms. Cumming, Mr. Page–Adams, and Dr. Schropp (the "Individual Hospital Defendants") objected to many of Plaintiff's requests for production on the basis of qualified immunity. They objected as follows:

Defendants Dr. Barkman, Cumming, Page–Adams, and Dr. Schropp object to this discovery request because it seeks information beyond the scope of these defendants' qualified immunity defense under *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Mitchell v. Maynard,* 80 F.3d 1433, 1447 (10th Cir.1996). These cases establish that the qualified immunity concept is a defense from suit as well as a defense from liability. Accordingly, any discovery request that seeks information not relevant to the qualified immunity defense is improper.

Plaintiff urges the Court to overrule this objection, as Plaintiff has not filed a dispositive motion asserting qualified immunity.

The Court is mindful that qualified immunity is not merely a defense to liability; it is also an immunity from the burdens of such pretrial proceedings as discovery.[14] The Supreme Court has emphasized that "qualified immunity entails a right to have suits dismissed at 'the earliest possible stage of the litigation,' sparing officials not only from liability but also from discovery and trial."[15] For this reason, "a defendant [asserting qualified immunity] may challenge a complaint by filing either a motion to dismiss or a motion for summary judgment."[16]

In this case, the Individual Hospital Defendants have filed neither a motion to dismiss nor a motion for summary judgment. They have only raised qualified immunity as a defense in their answer to Plaintiff's Complaint.[17] By failing to assert the defense in a dispositive motion, the Individual Hospital Defendants have failed to place the issue of qualified immunity before the Court. While the Court recognizes that defendants are generally entitled to have the Court determine the issue of qualified immunity prior to their being subjected to discovery, they must take the necessary steps to bring the issue before the Court for resolution. Defendants are not entitled to an indefinite suspension of discovery while they ponder whether and when to file a motion to dismiss or for summary judgement.[18]

In light of the above, the Court overrules the qualified immunity objections that the Individual Hospital Defendants have asserted in response to many of Plaintiff's discovery requests.

### 2. First Requests for Production No. 18–20, 22–24

■ These requests seek production of documents from the Hospital Defendants

**14.** *Behrens v. Pelletier,* 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (citations omitted)

**15.** *Franklin Sav. Corp. v. U.S.,* 180 F.3d 1124, 1138 (10th Cir.1999) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))).

**16.** *Sawyer v. County of Creek,* 908 F.2d 663, 665 (10th Cir.1990).

**17.** *See* Answer to Second Am. Compl. (doc. 80), Defense Nos. 1 & 2 at pp. 2.

**18.** The Individual Hospital Defendants served their responses containing their qualified immunity objections on June 13, 2003. More than five months have elapsed since that time—ample time in which these defendants could have filed a dispositive motion on this issue. The Court notes that in their October 20, 2003 response to the Motion to Compel, the Individual Hospital Defendants indicated they planned to file a motion for summary judgment on qualified immunity grounds "shortly." Doc. 123 at p. 5 n. 1. No such motion, however, has ever been filed.

concerning the following: (1) allegations made against Plaintiff in August 2000 leading to the initiation of Corrective Action Procedures; (2) allegations against Plaintiff regarding the 2000 incidents in same-day surgery and the neonatal intensive care unit; and (3) allegations made against Plaintiff regarding the 2002 incidents leading to Plaintiff's summary suspension and the recommendation that Plaintiff's clinical privileges be revoked.

The Hospital Defendants responded to these requests by referring Plaintiff to certain "Fair Hearing Notebooks," which contain approximately 430 pages of documents. According to Plaintiff, those Fair Hearing Notebooks contain only a portion of the responsive documents and other responsive documents must exist. The Hospital Defendants state in their response to the Motion to Compel that they have produced, simultaneous with the filing of their response, certain additional documents responsive to these requests. They indicate in their response to the Motion that they have no other documents responsive to these requests.

■ The Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control.[19] Plaintiff has not provided the Court with information sufficient to lead the Court to question the veracity of the Hospital Defendants' statement that no additional responsive documents exist. The Court thus has no basis upon which to compel the Hospital Defendants to produce any additional documents in response to these requests. The Court, will, however, require the Hospital Defendants to serve supplemental written answers to these requests, identifying all documents that they have produced in response to them, and representing that no other responsive documents are in their possession, custody, or control. Theses supplemental written answers shall be served within *twenty (20) days* of the date of filing of this Order.

### 3. First Requests for Production No. 26 and 27

First Request No. 26 seeks all documents submitted to or generated by the Hospital Board and its Executive Committee relating to the 2000, 2001, and 2002 allegations against Plaintiff. First Request No. 27 seeks all documents relating to the decision of the Hospital Board and Executive Committee to accept the Medical Staff Executive Committee's recommendation that Plaintiff's clinical privileges be revoked.

In their initial responses to these requests, the Hospital Defendants referred Plaintiff to the Fair Hearing Notebooks. The Hospital Defendants objected to producing any other documents in response to these requests on the grounds, asserting attorney-client privilege and attorney work product immunity. They also objected on the grounds that these requests are vague, overbroad, and include excessive subparts so as to impose "an unreasonable burden for these defendants to ascertain the intent of the request[s] and conduct a reasonable investigation to provide a response."

In her Motion to Compel, Plaintiff argues that "it appears from the numerous deficiencies in the Hospital Defendants' production that defendants are withholding relevant information concerning the deliberations of the Executive Board on the grounds of attorney-client privilege,"[20] and asks that the Hospital Defendants be required to submit a privilege log. Plaintiff also contends that the Hospital Defendants surely have other non-privileged documents in their possession, custody, or control that should be produced.

In their response to the Motion to Compel, the Hospital Defendants indicate that, simultaneous with the filing of their response brief, they have provided supplemental responses to these two document requests. In those supplemental responses, they reiterate their objections but state that "without waiving their objections," they are not withhold-

---

19. Fed.R.Civ.P. 34 imposes a duty on the responding party to produce documents that are in the "possession, custody or control of the party." *Am. Maplan Corp. v. Heilmayr,* 203 F.R.D. 499, 501 (D.Kan.2001).

20. Pl.'s Mot. to Compel (doc. 101) at p. 24.

ing any *non-privileged* documents. With their supplemental responses, they also provided Plaintiff with a privilege log identifying two documents. The Hospital Defendants state in their response to the Motion to Compel that their privilege log identifies two claimed attorney-client privileged documents that are responsive to theses requests. They assert that these documents "were prepared by counsel in connection with [this lawsuit] that were circulated at one of the Executive Board Meetings."[21]

In light of the above, the Court finds that the Hospital Defendants have produced all documents responsive to these two requests, except for the documents they contend are attorney-client privileged and have been identified in their privilege log. The Court finds no basis to support Plaintiff's allegation that the Hospital Defendants have not produced all non-privileged documents in their possession. As the Hospital Defendants have already made an affirmative representation in their supplemental responses that they have no other, non-privileged documents to produce, the Court will not require them to supplement their written responses.

With respect to Plaintiff's privilege arguments, the Hospital Defendants have provided a privilege log, and Plaintiff does not argue in her reply that the log is deficient. Finally, as the Hospital Defendants have produced all responsive non-privileged documents and identified the claimed privileged documents, there is no need for the Court to address the Hospital Defendants' objections of vagueness, overbreadth, and "excessive subparts." The Court will therefore deny the Motion to Compel as to these requests.

#### 4. First Request for Production No. 28 and First Interrogatory No. 19

First Request No. 28 asks the Hospital Defendants to produce:

All documents that relate to or concern . . . [a]llegations or complaints made against other physicians who have privileges at the Hospital, including but not limited to all formal or informal charges, complaints, grievances or problems raised orally or in writing against Dr. Talkad Raghuveer in Spring 2002; the Hospitals' response(s) to any such allegations or complaints; and all documents related to meetings, investigations, peer preview proceedings, findings, disciplinary action, and/or other action taken against the physician(s).

The general instructions accompanying the requests for production limit the time period covered to April 1, 1998 through present.

First Interrogatory No. 19, which was served on the Hospital Authority, seeks similar information, but for the time period 1995 to the present. It requests information regarding all charges, complaints, grievances, and problems "raised orally or in writing" against physicians with privileges at the Hospital, including any investigations or inquires made into the complaint, grievance, etc., and any action taken in response. First Interrogatory No. 19 also asks the Hospital Authority to identify all documents that relate to its response to the interrogatory.

The Hospital Defendants object to First Request No. 28 and First Interrogatory No. 19 on the basis that they constitute "a violation of the confidentiality of the peer review process . . . pursuant to KSA § 65–4914 et seq. and the personal privacy of physicians as well as, potentially, patients, that is protected and borrowed from disclosure by federal statute." They also object on the basis that the request and interrogatory seek irrelevant information/documents, are not reasonably calculated to lead to the discovery of admissible evidence, and are overly broad. The Hospital Defendants argue that Plaintiff seeks documents/information about complaints and charges that have nothing to do with the type of complaints and charges made against Plaintiff so as to even be comparable.[22]

---

**21.** Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 11.

**22.** The Court notes that the Hospital Defendants asserted various other objections to First Request No. 28 and First Interrogatory No. 19, which the Court need not address, as those objections are not addressed by the parties in their briefing on the Motion to Compel. *See Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999) (objections initially raised but not relied upon response to a motion to compel are deemed abandoned).

### a. Confidentiality and personal privacy issues

The Court will first examine the Hospital Defendants' objection that this request and interrogatory violate the "personal privacy of physicians as well as, potentially, patients, that is protected and borrowed from disclosure by federal statute."

■ It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential.[23] The Court will therefore overrule the Hospital Defendants' confidentiality objections.

■ The Court also overrules any objection that the Hospital Defendants are attempting to assert based on a "federal statute." The Hospital Defendants do not identify that statute in their initial responses and objections. They also fail to identify it in their response to the Motion to Compel, and, more importantly, do not even address this particular objection in their response to the Motion to Compel. When ruling on a motion to compel, a court generally considers only those objections that have been timely asserted in the initial responses to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel.[24] Thus, when an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege abandoned.[25] As the Hospital Defendants have failed to reassert or discuss this objection/privilege allegedly based on federal statute, the Court will deem it abandoned.

Notwithstanding the above, the Court appreciates the confidentiality and privacy concerns raised by the Hospital Defendants. The parties have already entered into a Confidentiality Agreement and Protective Order ("Stipulated Protective Order") (doc. 53). To the extent that the Court grants the Motion to Compel with respect to this information, the Hospital Defendants should avail themselves of the provisions of that Stipulated Protective Order to protect the confidentiality of this material. If the Hospital Defendants find that the Stipulated Protective Order does not provide sufficient protection, the parties shall meet and attempt to confer on a proposed protective order that will protect the privacy interests sought to protected. In addition, the parties should develop a procedure for redacting or withholding information that the parties *agree* is protected by privacy interests or any other privilege that the parties *agree* applies to this information.[26]

### b. Peer-review privilege

The Court will now address the Hospital Defendants' assertion of the peer-review privilege. Before examining the merits of the parties' arguments, the Court notes that Plaintiff discusses the privilege in connection with First Request Nos. 18–20, 22–24, 26–27, and First Interrogatory Nos. 10 and 13. The peer review privilege is not asserted in response to any of those discovery requests. The only discovery requests to which the Hospital Defendants assert the peer review privilege are First Request No. 28 and First Interrogatory No. 19. The Court's discussion of the peer-review privilege will therefore be limited to those two particular discovery requests.[27]

---

23. *General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 643 (D.Kan.2003); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan.2002). *See also Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (citations omitted) ("[T]here is no absolute privilege for trade secrets and similar confidential information . . . .").

24. *See Cotracom*, 189 F.R.D. at 662.

25. *Id.; Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, No. 01–2193–JWL, 2002 WL 1162421, at *1, n. 1 (D.Kan. May 30, 2002).

26. For example, any applicable physician-patient privilege or privilege arising under the Health Care Quality Improvement Act of 1986.

27. Plaintiff provides significant argument that, pursuant to the express terms of K.S.A. 65–4915(c), the peer review privilege does not apply to the peer review reports, proceedings, documents, etc. regarding Plaintiff herself. Plaintiff, however, fails to recognize that the Hospital Defendants have not asserted the peer review privilege in response to any interrogatory or document request seeking information/documents concerning *Plaintiff*. The Hospital Defendants assert the peer-review privilege only in response

The peer-review privilege asserted by the Hospital Defendants is contained in K.S.A. 65–4915. Subsection (b) of that statute provides, that, with certain exceptions,

[T]he reports, statements, memoranda, proceedings, findings and other records of peer review committees or officers shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding.[28]

The Hospital Defendants also rely on the privilege contained in K.S.A. 65–4925, which provides that reports and records made pursuant to the Kansas Risk Management statutes are confidential and privileged.[29] This privilege, which is sometimes referred to as the "risk management" privilege,[30] provides:

(a) The reports and records made pursuant to K.S.A. 65–4923 or 65–4924, and amendments thereto, shall be confidential and privileged, including:

(1) Reports and records of executive or review committees of medical care facilities or of a professional society or organization;

(2) reports and records of the chief of the medical staff, chief administrative officer or risk manager of a medical care facility;

(3) reports and records of any state licensing agency or impaired provider committee of a professional society or organization; and

(4) reports made pursuant to this act to or by a medical care facility risk manager, any committee, the board of directors, administrative officer or any consultant.

Such reports and records shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity and shall not be admissible in any civil or administrative action other than a disciplinary proceeding by the appropriate state licensing agency.[31]

Plaintiff argues that these privileges should not apply to this case because Plaintiff has asserted claims under Title VII, and that the need Plaintiff has for this information outweighs the Hospital Defendants' need to keep this information protected pursuant to the Kansas peer review and risk management statutes. She argues this information is critical to proving her claims that Defendants disciplined her differently than male physicians alleged to have engaged in conduct similar to Plaintiff's alleged conduct.

The starting point for the Court's decision is Federal Rule of Evidence 501. In federal court, the determination of what is privileged depends upon the dictates of Rule 501,[32] which provides as follows:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a .. government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.[33]

In other words, where the claims are brought pursuant to federal law, the federal

---

to First Request No. 28 and First Interrogatory No. 19, which seek information/documents concerning *physicians other than Plaintiff.*

**28.** K.S.A. 65–4915(b).

**29.** *Hinsdale v. City of Liberal, Kan.,* 981 F.Supp. 1378, 1380 (D.Kan.1997) (citing K.S.A. 65–4925).

**30.** *See e.g., Hill v. Sandhu,* 129 F.R.D. 548, 549 (D.Kan.1990).

**31.** K.S.A. 65–4925(a).

**32.** *ERA Franchise Sys., Inc. v. Northern Ins. Co.,* 183 F.R.D. 276 (D.Kan.1998) (quoting *Fisher v. City of Cincinnati,* 753 F.Supp. 692, 694 (S.D.Ohio 1990)).

**33.** Fed.R.Evid. 501.

common law of privilege applies.[34] This is a civil rights and employment discrimination action brought pursuant to 42 U.S.C. §§ 1983 and 1985, the Equal Pay Act, and Title VII of the Civil Rights act of 1964. As these claims are all brought pursuant to federal law, the Court must decide this privilege issue by applying the principles of federal common law.

█ The Supreme Court has cautioned that an evidentiary privilege should not be recognized or applied unless it "promotes sufficiently important interests to outweigh the need for probative evidence." [35] Because privileges "contravene the fundamental principle that the public has a right to every man's evidence," any such privilege must strictly construed.[36] Moreover, "although Rule 501 manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis," the courts are "disinclined to exercise this authority expansively." [37]

Neither the Supreme Court nor the Tenth Circuit has recognized a medical peer review or medical risk management privilege under federal common law. The Court has located only one case in which a court in this District had addressed this issue in a civil rights case. In *Turnbull v. Topeka State Hospital,*[38] Magistrate Judge Rushfelt addressed the applicability of the risk management privilege set forth in K.S.A. 65–4925 in a Title VII sexual harassment action. There, the plaintiff's counsel deposed two management employees of the defendant state hospital. Defense counsel instructed the employees not to answer questions pertaining to certain Security Management Reports, Risk Management Minutes, and Executive Committee Minutes, asserting the risk management privilege set forth in K.S.A. 65–4925. Defendant argued that the statute provided privileges against both discovery of the documents and the testimony by committee members who attended the meetings that were reflected in the minutes and reports.[39]

The plaintiff argued that because her action arose under Title VII, the statutory risk management privilege did not apply. Judge Rushfelt agreed, noting that pursuant to Federal Rule of Evidence 501, the federal common law of privilege applies, and that no such privilege exists under federal common law.[40] Judge Rushfelt further noted that the defendants had "not pointed to any principle of common law as justification ... to apply the statutory privilege(s) created by K.S.A. 65–4925." [41]

Judge Rushfelt's decision in *Turnbull* is consistent with the vast majority of cases from other federal jurisdictions that have examined this issue in civil rights or discrimination actions.[42] As the district court in *Mattice v. Memorial Hospital of South*

---

**34.** *Turnbull v. Topeka State Hosp.*, 185 F.R.D. 645, 649 (D.Kan.1999) (citing *Mason v. Stock,* 869 F.Supp. 828, 832 (D.Kan.1994)).

**35.** *Jaffee v. Redmond,* 518 U.S. 1, 2, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (citation omitted).

**36.** *Univ. of Pa. v. E.E.O.C.,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (internal quotations and citations omitted).

**37.** *Id.* (internal quotations and citations omitted).

**38.** 185 F.R.D. 645 (D.Kan.1999).

**39.** *Id.* at 648.

**40.** *Id.*

**41.** *Id.* at 649.

**42.** *See, e.g., Virmani v. Novant Health Inc.,* 259 F.3d 284, 293 (4th Cir.2001) (declining to recog-

nize privilege in action alleging race discrimination under 42 U.S.C. § 1985, i.e., that hospital's peer review process was conducted in a discriminatory manner); *Marshall v. Spectrum Med. Group,* 198 F.R.D. 1, 5 (D.Me.2000) (declining to recognize Maine's peer review privilege in anesthesiologist's ADA action); *Holland v. Muscatine Gen. Hosp.,* 971 F.Supp. 385, 390 (S.D.Iowa 1997) (declining to recognize privilege in Title VII action); *Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 561 (S.D.N.Y.1996) (holding that New York and New Jersey peer review statutes did not apply in section 1981 and 1985 race discrimination lawsuit); *Robertson v. Neuromedical Ctr.,* 169 F.R.D. 80, 83–84 (M.D.La.1996) (holding that state medical peer review privilege did not apply in an action alleging ADA violation); *LeMasters v. Christ Hosp.,* 791 F.Supp. 188, 191 (S.D.Ohio 1991) (declining to recognize privilege in case alleging sex discrimination and retaliation); *Schafer v. Parkview Mem'l Hosp., Inc.,* 593 F.Supp. 61, 65 (N.D.Ind.1984) (declining to recognize privilege in ADEA case).

*Bend*[43] noted, "[n]early all of the cases that have weighed the state-law medical peer review privilege against the interests advanced by the federal anti-discrimination laws have concluded that the privilege does not preclude discovery of peer review materials."[44]

The Court finds that the reasoning presented in these cases is persuasive, and the Court agrees with the conclusions of these cases that the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review or risk management materials. As in this case, the plaintiffs in the above-cited discrimination cases argued that the discovery was relevant to show that the they were treated differently in the peer review process than other similarly situated physicians. For example, in *Virmani v. Novant Health, Inc.*,[45] the Fourth Circuit rejected application of a North Carolina statutory peer review privilege and allowed the plaintiff to discover peer review materials relating to other physicians. The plaintiff in *Virmani* sued the defendant hospital under 42 U.S.C. §§ 1983 and 1985, alleging that his privileges were terminated because of his race and national origin. The court weighed the important interests to be served by the disclosure of the peer review materials with the need to protect the confidentiality of the peer review process so as to control the quality of patient care and to promote the flow of candid and critical information between physicians and the peer review committees.[46] The Fourth Circuit concluded:

> The evidentiary benefit that will be realized by refusing to grant a privilege for medical peer review materials in a discrimination case is potentially great. The evidence [plaintiff] Virmani seeks is crucial to his attempt to establish that he has been the subject of disparate treatment on the

basis of race and ethnicity. To prove his allegations of disparate treatment, Virmani must compare the proceedings in his case against those involving similarly situated physicians. The interest in facilitating the eradication of discrimination by providing perhaps the only evidence that can establish its occurrence outweighs the interest in promoting candor in the medical peer review process.[47]

Similarly, in *LeMasters v. Christ Hospital*,[48] the court weighed the evidentiary value of the peer review materials against the purpose behind the statutory peer review privilege. In that case, the plaintiff physician sued a hospital under Title VII, alleging that the hospital discriminated against her on the basis of sex and retaliated against her when it suspended and terminated her staff privileges.[49] She sought to compel the defendant hospital to produce certain peer review information, which the hospital refused to produce based on the peer review privilege set forth in an Ohio state statute. The court refused to apply the Ohio peer review privilege statute, holding that the physician's right to be free from discrimination and the need for information sufficient to prove her allegations outweighed the hospital's need and desire to keep peer review materials confidential.[50]

Applying this same balancing test here, the Court finds that the balance weighs in favor of discovery by Plaintiff. Plaintiff's Title VII and section 1983 claims are for disparate treatment. It is difficult to perceive how Plaintiff can be expected to argue and prove those disparate treatment claims case without access to the type of review and decision-making processes undertaken in comparable situations with Plaintiff's male counterparts. The Court therefore holds that the peer review privilege set forth in

**43.** 203 F.R.D. 381 (N.D.Ind.2001).

**44.** *Id.* at 385 (citations omitted).

**45.** 259 F.3d 284 (4th Cir.2001).

**46.** *Id.* at. 287–89.

**47.** *Id.* at 289 (citing *University of Pa.*, 493 U.S. at 193, 110 S.Ct. 577 ("[F]erreting out ... invidious discrimination is a great, if not compelling, governmental interest.")).

**48.** 791 F.Supp. 188 (S.D.Ohio 1991).

**49.** *Id.* at. 189.

**50.** *Id.* at 190–92.

K.S.A. 65–4915 and the risk management privilege set forth in K.S.A. 65–4925 do not apply to bar disclosure of the documents and information requested in First Request No. 18 and First Interrogatory No. 19. The Court notes that this holding does not mean that peer review or risk management proceedings and materials should be discoverable in every case. The Court concludes only that a physician alleging that a health care facility discriminated and retaliated against her is entitled to discovery of the peer review proceedings needed to prove her claim.

### c. Irrelevant and not reasonably calculated to lead to the discovery of admissible evidence objections

■ Having determined that the documents and information sought in First Request No. 28 and First Interrogatory No. 19 are not privileged, the Court must examine the validity of the other objections that the Hospital Defendants' assert in response thereto. The Hospital Defendants argue that Request No. 28 and Interrogatory No. 19 are overbroad because they seek information and documents about any types of problems and complaints raised against physicians with privileges at the Hospital, which would "include numerous situations that are clearly irrelevant to this case." [51] By way of illustration, the Hospital Defendants argue that a simple complaint that a physician was using the wrong parking spot at the Hospital would fall within the scope of these discovery requests, and yet would not be relevant at all to Plaintiff's claims. In other words, the Hospital Defendants argue that these discovery requests are objectionable because they seek documents and information beyond the type of complaints and charges made against Plaintiff and are not comparable to Plaintiff's situation. Plaintiff contends that this discovery is not overbroad "given the wide range of complaints allegedly filed against [Plaintiff]." [52] Plaintiff asserts that she needs information "regarding the range of complaints filed against other physicians to establish that Defendants treated [her] differently by responding to complaints against her, regardless or the magnitude, while ignoring similar or more severe complaints lodged against other physicians." [53]

The Court is persuaded by Plaintiff's argument, and finds that these discovery requests—even though they will most likely discover some information about complaints and problems of a different type and magnitude than the alleged complaints and problems relating to Plaintiff—are still likely to lead to the discovery of admissible evidence.

■ The touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is "reasonably calculated to lead to the discovery of admissible evidence." [54] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[55] Furthermore, the Court is mindful of the rule that "discovery in discrimination cases should not be narrowly circumscribed." [56] It is well settled that the scope of discovery is particularly broad in Title VII cases.[57] Accordingly, the Court will overrule the Hospital Defendants' relevancy objections to First Request No. 28 and First Interrogatory No.19.[58]

---

51. Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 15.

52. Pl.'s Mot. to Compel (doc. 101) at p. 13.

53. *Id.*

54. Fed.R.Civ.P. 26(b)(1).

55. *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 670 (D.Kan.2003); *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001).

56. *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1368 (10th Cir.1997); *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995).

57. *Gomez,* 50 F.3d at 1520 (citing *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991)); *Garrett v. Sprint PCS,* No. 00–2583–KHV, 2002 WL 181364, at *1 n. 3 (D.Kan. Jan.31, 2002).

58. While these discovery requests might be deemed overly broad in other respects, e.g., because they cover such a vast time period or because they seek documents/information about

### 5. First Request for Production No. 29 and First Interrogatory No. 17

These discovery requests seek documents and information from the Hospital Defendants regarding the decision to report Plaintiff to the National Practitioners Data Bank ("Data Bank").

#### a. First Request No. 29

First Request No. 29 seeks all documents that relate to or concern the decision to report Dr. Sonnino to the Data Bank, including all documents related to the reasons or justifications for the decision, and all documents that Defendants submitted to the Data Bank. The Hospital Defendants did not serve any objections to First Request No. 29, and referred Plaintiff to the Fair Hearing Notebooks. The Hospital Defendants supplemented their response on the same date that they filed their response to the Motion to Compel, and referred Plaintiff to several additional documents. The Hospital Defendants represented in their supplemental response that "these defendants are not withholding any non-privileged documents that it [sic] has located or is aware of based upon any objections."

Plaintiff asserts that the Fair Hearing Notebooks, which were produced in response to Request No. 29, contain no documents submitted to the Data Bank and that other documents responsive to this request presumably exist. The Hospital Defendants state in their response to the Motion to Compel that Plaintiff has received all of the documents that were submitted to the Data Bank except for "materials prepared by attorneys working on behalf of defendants." [59] They also state that Plaintiff has received all documents "that were created with regard to theses issues and there are no other materials that are non-privileged." [60] Apparently, the Hospital Defendants are contending that

other documents responsive to First Request No. 29 exist, but that they are not being produced because they are privileged or protected by the attorney work product doctrine.

 The Hospital Defendants never asserted the attorney-client privilege or work product doctrine in response to this request for production. It is well settled that a party may not assert a privilege for the first time in its response to a motion to compel; a privilege not timely asserted in the initial response to a request for production is deemed waived. [61] As the Tenth Circuit has stated: "It is not enough that a document would have been privileged if an adequate and timely showing had been made. The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." [62] Thus, the Court finds that the Hospital Defendants have waived any claim to attorney-client privilege or work product immunity that they may have in response to First Request No. 29. The Hospital Defendants shall therefore produce all documents that are responsive to this request that they have previously withheld on the basis of attorney-client privilege or work product immunity.

Based on what Plaintiff asserts in her briefs, it appears that other, *non-privileged* documents responsive to First Request No. 29 may also exist. The Court will therefore direct the Hospital Defendants to make a supplemental written answer and produce *all* privileged and non-privileged documents responsive to this request. The supplemental answer and production shall be made within *twenty (20) days* of the date of filing of this Order.

#### b. First Interrogatory No. 17

First Interrogatory No. 17 (which was served on the Hospital Authority but not the

physicians in other departments or who are otherwise not similarly situated to Plaintiff, the Hospital Defendants *do not assert such objections.* The Court therefore need not examine whether they are objectionable for these or any other reasons not asserted by the Hospital Defendants.

**59.** Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 13.

**60.** *Id.*

**61.** See, e.g., *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *Starlight Int'l, Inc. v. Herlihy,* 181 F.R.D. 494, 497 (D.Kan.1998).

**62.** *Id.*

individual Hospital Defendants) seeks information regarding the decision to report Plaintiff to the Data Bank, including the identity of the persons who made the decision and who had input into the decision, the reasons for the decision, the identity of persons who have information concerning the reasons for the decision, and the identity of documents that support those reasons.

In their initial response to this interrogatory, the Hospital Authority provided only objections. It objected on the basis that the interrogatory is vague, overbroad, and "includes excessive subparts such that it is an unreasonable burden ... to ascertain the intent of the request and conduct a reasonable investigation to provide an answer." It also objected on the grounds that it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Finally, it objected to the interrogatory on the grounds that it calls for a legal conclusion and "addresses an issue that is exclusively legal in nature, and, thus, unavoidably invades matters protected by the attorney-client privilege and work product doctrine, including attorney work product." At the same time the Hospital Authority filed its response to the Motion to Compel, the Hospital Authority served a supplemental answer to this interrogatory, referring Plaintiff to a document authored by the Secretary of the United States Department of Health and Human Services ("Secretary") responding to Plaintiff's request that the Secretary review the report about Plaintiff that the Hospital submitted to the Data Bank.

In its response to the Motion to Compel, the Hospital Authority does not reassert its objections as to vagueness, overbreadth, excessive subparts, unreasonable burden, relevance, and not reasonably calculated to lead to the discovery of admissible evidence. The Court will therefore deem those objections

abandoned and will overrule them.[63] The Hospital Authority does, however, reassert its attorney-client privilege and work product immunity claims and appears to be reasserting its objection that the interrogatory calls for a legal conclusion.

■ That a discovery request "calls for a legal conclusion" is not valid objection.[64] Even if it were considered a valid objection, the Court does not find that this interrogatory calls for such a legal conclusion. Rather, it seeks factual information: the identity of the persons who made the decision to report Plaintiff to the Data Bank, Defendants' reasons for reporting Plaintiff to the Data Bank, the identity of the persons who have knowledge or information concerning the reasons for reporting her, and the identity of documents that support those reasons. This objection will therefore be overruled.

■ In addition, the Court finds the Hospital Authority's assertion of the attorney-client privilege and work product immunity to be unsupported. The only support for the claimed privilege/immunity is the Hospital Authority's conclusory assertion that "[t]he decision on the timing and content of the reports to the [Data Bank] was done pursuant to advice and guidance provided by attorneys for the Hospital Authority" and that "the issues concerning the reports ... are inherently legal questions that require the advice of counsel." [65] The mere fact that an attorney may have advised Defendants regarding the decision to report Plaintiff to the Data Bank does not render all information concerning that decision to be undiscoverable. The Court finds the Hospital Authority's assertion of the attorney-client privilege and work product immunity to be unsupported.

As the party asserting objections based on attorney-client privilege and work product

**63.** *See Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999) (objections initially raised but not relied upon response to a motion to compel are deemed abandoned).

**64.** *Beach v. City of Olathe,* No. 99–2210–GTV, 2000 WL 960808, at *12 (D.Kan. July 6, 2000) (overruling objection that discovery request called for legal conclusion); *see also Continental*

*Ill. Nat'l Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 683 (D.Kan.1991) (an interrogatory may properly inquire into a party's contentions or defenses in the cases and the factual bases therefor).

**65.** Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 13.

immunity, the Hospital Authority bears the burden of establishing that either or both apply.[66] The Hospital Authority must make a "clear showing" that the asserted privilege/immunity applies.[67] To carry that burden, it must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery.[68] In addition, it must provide sufficient information to enable the court to determine whether each element of the asserted privilege or immunity is satisfied.[69] A "blanket claim" as to the applicability of the privilege or work product protection does not satisfy the burden of proof.[70] A party's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege is not excused because the information is later shown to be one that would have been privileged if a timely showing had been made.[71]

In sum, the Court finds the Hospital Authority's assertion of the attorney-client privilege and work product immunity to be unsupported and therefore overrules those objections. As the Court has also overruled all of the other objections asserted in response to this interrogatory, the Motion to Compel will be granted as to Interrogatory No. 17. The Hospital Authority shall provide a complete and full response to this interrogatory within **twenty (20) days** of the date of filing of this Order.

### 6. First Request for Production No. 30 and First Interrogatory No. 18

These discovery requests seek documents and information regarding the decision to report Plaintiff to the Kansas Board of Healing Arts and are virtually identical to First Request No. 29 and First Interrogatory No.

17, discussed immediately above. In response to First Interrogatory No. 18, the Hospital Authority objected on the basis of relevance, overbreadth, undue burden, and not reasonably calculated to lead to the discovery of admissible evidence. It also objected on the basis that the interrogatory calls for a legal conclusion, and it asserted the attorney-client privilege and work product immunity. It went on, however, to provide some information in response to the interrogatory, but stating that it was providing that information without waiving its stated objections.

For the same reasons set out above with respect to Interrogatory No. 17, the Court finds that the Hospital Authority has failed to support its attorney-client privilege and work product immunity objections to this interrogatory. In addition, for the same reasons set forth above, the Court overrules the Hospital Authority's objection that the interrogatory calls for a legal conclusion. Finally, the Court finds that the Hospital Authority has abandoned its other objections to this interrogatory and therefore overrules them. The Court will grant the Motion to Compel as to this interrogatory and directs the Hospital Authority to provide a full and complete supplemental response to the interrogatory within **twenty (20) days** of the date of filing of this Order.

In response to First Request No. 30, the Hospital Defendants incorporated by reference the Hospital Authority's response and objections to First Interrogatory No. 18. As the Court finds the asserted privilege and work product immunity inapplicable and the other objections invalid or abandoned, the Court overrules the Hospital Defendants' objections to this request. The Hospital Defendants shall produce all privileged and non-

---

**66.** *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D.Kan.2000) (citing *Boyer v. Bd. of County Comm'rs*, 162 F.R.D. 687, 688 (D.Kan.1995)).

**67.** *Heavin v. Owens–Corning Fiberglass*, No. 02–2572–KHV–DJW, 2004 WL 316072, at *2 (D.Kan. Feb.3, 2004) (citing *Ali v. Douglas Cable Communications, Ltd. P'ship*, 890 F.Supp. 993, 994 (D.Kan.1995)).

**68.** *McCoo*, 192 F.R.D. at 680 (citing *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D.Kan.1994)).

**69.** *McCoo*, 192 F.R.D. at 680 (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan.1995)).

**70.** *McCoo*, 192 F.R.D. at 680 (citing *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D.Kan.1994)).

**71.** *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984).

privileged documents responsive to First Request No. 30 and shall provide a supplemental written answer to the request within *twenty (20) days* of the date of filing of this Order.

### 7. First Request for Production No. 15

█ This request asks the Hospital Defendants to produce all documents relating to "all concerns" raised by other physicians at the Hospital, University School of Medicine, or Children's Mercy Hospital concerning the quality of care for pediatric patients at the Hospital.

The Hospital Defendants asserted numerous objections to this request in their initial response. In their response to the Motion to Compel, however, they reassert only their qualified immunity, overbreadth, relevance, and not reasonably calculated to lead to the discovery of admissible evidence objections. Thus, the other objections asserted by the Hospital Defendants in their initial response are deemed abandoned and are overruled. With respect to the Individual Hospital Defendants' assertion of qualified immunity, the Court has already overruled that objection. The Court therefore need only address the merits of Defendants overbreadth, relevance, and not reasonably calculated to lead to the discovery of admissible evidence objections.

The only argument that the Hospital Defendants make in their response to the Motion to Compel with respect to these objections is that any concerns that other physicians may have raised with regard to pediatric care at the Hospital "are completely irrelevant to the question of whether Dr. Sonnino is a disruptive physician." [72] Plaintiff counters that the request is relevant and not overly broad because it may elicit documents demonstrating that Defendants treated Plaintiff differently from male physicians or other physicians who had not engaged in protected activity and who had raised concerns regarding pediatric care similar to Plaintiff's, and will therefore support Plaintiff's discrimination and retaliation claims. Plaintiff also argues

that the documents are relevant to support her section 1983 claim that Defendants retaliated against her in violation of her First Amendment rights for speaking out about matters of public concern. Plaintiff asserts that these documents may substantiate her claims that her concerns were well-founded and indeed a matter of public concern.

The Court agrees with Plaintiff and finds that this document request seeks relevant information and is reasonably calculated to lead to the discovery of admissible evidence. As noted above, relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[73] Plaintiff has satisfied this test by showing that these documents may be relevant to support her Title VII discrimination and retaliation claims and her section 1983 claim. The Court will therefore grant the Motion to Compel as to First Request No. 15. The Hospital Defendants shall provide a supplemental written answer and produce all documents responsive to this request within *twenty (20) days* of the date of filing of this Order.

### 8. First Requests for Production No. 16 and 17 and First Interrogatories No. 9 and 16

First Requests No. 16 and 17 ask the Hospital Defendants to produce all documents relating to Plaintiff's work, professional, or personal relationships with her coworkers and supervisors and all documents relating to any evaluations, criticisms, or problems regarding her job performance at the Hospital and University. The Individual Hospital Defendants asserted qualified immunity in response to both of these requests. The Hospital Defendants also asserted a number of other objections in response to Request No. 16. They also referred Plaintiff to various documents that had been produced in response to other discovery requests.

---

**72.** Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 14.

**73.** *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 670 (D.Kan.2003); *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001).

First Interrogatory No. 9 asks the Hospital Authority to identify all facts and documents supporting the Hospital Authority's assertion that Plaintiff's conduct disrupted the Hospital's operations, the functioning of the Medical Staff, and the delivery of quality medical care at the Hospital. First Interrogatory No. 16 asks the Hospital Authority to identify all evaluations, criticisms, or assessments of Plaintiff's job performance and clinical expertise and to provide certain information regarding the person making the assessment, the date of the assessment, and any action taken as a result of the assessment. The Hospital Authority asserted various objections to these interrogatories; however, it referred Plaintiff to various documents and information provided in response to other discovery requests, stating that it was doing so without waiving any of its asserted objections.

The Hospital Defendants state in their response to the Motion to Compel that they have made a supplemental identification and production of documents in response to these requests and interrogatories and that they have now identified and produced all documents responsive to them. They do not reassert any of the objections that they made in their initial responses, and the parties focus their arguments solely on whether other documents exist that should have been identified or produced. The Court therefore presumes that the Hospital Defendants have intended to abandon their objections and that the only issue the Court needs to address with respect to these interrogatories and requests is whether all responsive documents have been produced and identified.

Plaintiff argues in her reply that it is not credible that the few evaluations and documents identified and produced by the Hospital Defendants are the only documents that exist which reflect Plaintiff's performance and relationship with other Hospital employees. The Court cannot compel these Defendants to produce or identify documents that do not exist. The Court can, however, require the Hospital Defendants to serve supplemental responses to First Request Nos. 16 and 17, making it clear what documents

have been produced that are responsive to these requests and making an affirmative representation that no other responsive documents exist. The Court orders the same with respect to the Hospital Authority and First Interrogatory Nos. 9 and 16, and the Hospital Authority shall serve supplemental responses to these Interrogatories identifying with specificity the documents that it is asked to identify and affirmatively representing that it is aware of no other existing documents which are responsive to these interrogatories. The supplemental written answers shall be served and the supplemental production shall take place within *twenty (20) days* of the date of filing of this Order.

### 9. First Request for Production No. 14 and First Interrogatory No. 2

First Request No. 14 seeks all documents relating to complaints or concerns expressed by Plaintiff concerning patient care issues at the Hospital and all responses by Defendants and other Hospital personnel to those complaints. First Interrogatory No. 2 asks the Hospital Authority to identify all actions taken by the Hospital Defendants in response to concerns raised by Plaintiff regarding the quality of pediatric care at the Hospital.

The Hospital Defendants asserted numerous objections in their response to First Request No. 14. They asserted similar objections to Interrogatory No. 2, but referred Plaintiff to the Fair Hearing Notebooks and certain testimony given at the Fair Hearing. In their response to the Motion to Compel, the Hospital Defendants do not address the validity of their objections; they merely state that (1) their response "is proper and complete;" (2) they have given a detailed response to Interrogatory No. 2; (3) they have provided additional documents in their supplemental production; and (4) "without waiving the objections contained in the responses to these discovery requests … there are no other documents that are withheld based upon the objections to these discovery requests." [74]

Plaintiff counters in her reply that it appears the Hospital Defendants have in their

---

74. Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 17.

possession additional documents responsive to this request. Plaintiff states that she filed at least forty-two formal incident reports, in addition to sending numerous memoranda and letters to Hospital staff regarding patient care, yet Defendants have produced *only one* of the incident reports. She notes that although several documents produced by the Hospital Defendants in their supplemental production refer to some of these incident reports, the Hospital Defendants have never produced those reports or any related documents.

As the Hospital Defendants have failed to reassert the objections it asserted in response to First Request No. 14 (with the exception of the Individual Hospital Defendants' assertion of qualified immunity, which the Court has overruled), and the Hospital Authority has failed to reassert the objections it asserted in response to First Interrogatory No. 2, the Court deems these objections abandoned. The Court therefore grants the Motion to Compel as to First Request No. 14 and First Interrogatory No. 2. With respect to Plaintiff's contention that other responsive documents exist, the Court again notes that it cannot compel these Defendants to produce documents that do not exist. However, based on the information presented by Plaintiff, the Court does question whether the Hospital Defendants have produced all responsive documents. The Court will therefore require the Hospital Defendants to serve a supplemental written answer to First Request No. 14, making it clear what documents have been produced in response to this request and making an affirmative representation that no other responsive documents exist.

The Court will also order the Hospital Authority to provide a supplemental response to First Interrogatory No. 2. The Court notes that, contrary to what the Hospital Authority asserts in its response to the Motion to Compel, it has not provided a "detailed statement" in response to Interrogatory No. 2 "identifying specific instances of responses to complaints made by Dr. Sonnino" nor has it provided a "detailed paragraph

[indicating] where responses were made to Dr. Sonnino's complaints." [75] It appears that the Hospital Authority is mistakenly referring to its response to First Interrogatory No. 3, which is not at issue here.

The supplemental written responses shall be served, and any additional responsive documents shall be produced, within *twenty (20) days* of the date of filing of this Order

### 10. First Request for Production No. 35

■ This request seeks all calendars, daytimers, and other documents in which the Individual Hospital Defendants listed their appointments and activities during the period January 1, 2001 through the present. The Individual Hospital Defendants objected on the basis of qualified immunity. The Hospital Defendants objected on the basis that the request is vague and overbroad, includes excessive subparts, creates an unreasonable burden, seeks irrelevant information, and is not calculated to lead to the discovery of admissible evidence. In their response to the Motion to Compel, the Hospital Defendants argue that the request is irrelevant and overly broad because it would require the Individual Hospital Defendants to provide personal information and information about other Hospital staff and about Hospital patients, information that has no bearing on the claims or defenses in this case. They also assert that they would be required to redact such information, not only because it is irrelevant, but in order to protect the privacy of patients and other staff. They assert that making such redactions, however, would impose an "incredible burden." [76] In her reply, Plaintiff recognizes that there may be a need for the Hospital Defendants to redact some information, but she argues that Defendants have failed to show how making such redactions would impose an undue burden.

The Court agrees with the Hospital Defendants that entries regarding patients and other staff members and entries of a personal nature regarding the Individual Hospital

---

75. Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at pp. 16–17.

76. Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at pp. 17–18.

Defendants have no bearing on any claim or defense in this case. Indeed, Plaintiff does not even attempt to show how that information is relevant or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff focuses only on those entries and information that deal with appointments, meetings, and discussions Defendants had regarding Plaintiff's performance and/or employment, appointments and meetings that Defendants had with Plaintiff, and actions that Defendants took to "expel Dr. Sonnino from the Hospital before they initiated the suspension of her privileges and the proceedings to revoke her privileges." [77] Plaintiff does not argue that any other information or entries contained within the daytimers or calendars are relevant.

Accordingly, the Court will uphold the Hospital Defendants' relevancy objections to the extent that the request would result in the production of (1) entries and information regarding patients and other staff members, and (2) entries and information of a personal nature regarding the Individual Hospital Defendants. The Court will therefore allow the Hospital Defendants to redact such information. The Court, however, rejects the Hospital Defendants' argument that the process of making such redactions would impose an undue burden on them. As the parties asserting undue burden, the Hospital Defendants have the burden to establish facts justifying their objection, i.e., facts demonstrating that the time or expense involved in responding to the requested discovery is unduly burdensome.[78] This typically imposes an obligation on the responding party to provide an affidavit or other evidentiary proof of the time or expense involved.[79] The Hospital Defendants have provided only a conclusory allegation, and no detailed explanation, affidavit, or other evidence, demonstrating that redacting these calendars and daytimers would be unduly burdensome.[80] Thus, the Court over-

rules the Hospital Defendants' objection that redacting this information would be unduly burdensome.

The Hospital Defendants have not reiterated their vagueness and excessive subparts objections, and, thus, the Court deems those abandoned. The Court has already overruled the Individual Hospital Defendants' qualified immunity objection. Thus, the Court will grant the Motion to Compel as to First Request No. 35, but will allow the Hospital Defendants to redact any entries or other information contained in these documents that does not relate to (1) appointments, meetings, or discussions Defendants had regarding Plaintiff's, (2) appointments and meetings that Defendants had with Plaintiff, and (3) actions that Defendants took relating to Plaintiff.

### 11. First Requests for Production No. 32 and 36

■■■ First Request No. 32 seeks:

All documents that relate to or concern … [t]he potential closing of the Hospital's Pediatric Surgery Service, including but not limited to the stated intention of defendants to shut down the Hospital's Pediatric Surgery Service unless Dr. Sonnino left the hospital by October 1, 2002.

First Request No. 36 seeks:

All documents that relate to or concern … [f]or the period of January 1, 1998 to the present, the complete annual reports, balance sheets, financial statements, including all exhibits thereto, of the Hospital Authority, KUSA, and the University, and including all such statements as audited by their outside auditors.

The Hospital Defendants objected to both of these requests on grounds that they (1) seek irrelevant information; (2) are not reasonably calculated to lead to the discovery of

---

77. Pl.'s Reply (doc.142) at p. 16.

78. See *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan.2002); *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 332 (D.Kan.1991)

79. *Bradley v. Val–Mejias*, No.00–2395–GTV, 2001 WL 1249339, at *6 n. 4 (D.Kan. Oct.9, 2001).

80. See *Horizon Holdings*, 209 F.R.D. at 213 (overruling undue burden objection where party asserting objection provided no detailed explanation, affidavit, or other proof showing that responding to discovery request would cause undue burden).

admissible evidence; and (3) "violate[ ] the Limitations on Discovery set forth in Rule 26(b)(2), Fed.R.Civ.P." The Individual Hospital Defendants also asserted the objection of qualified immunity, which the Court has already overruled.

The Hospital Defendants' response to the Motion to Compel fails to address their objections that the requests violate the limitations on discovery set forth in Rule 26(b)(2), and, thus, the Court deems they have abandoned those objections. The Court will therefore only address the objections that the requests seek irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff contends that both requests seek documents that are necessary for her to demonstrate that Defendants' real reason for suspending and then revoking her privileges was to drive her out of her job, which would result in financial savings that would (1) prevent the closing of the Pediatric Surgery Department, and (2) save the job of Dr. Schropp (a male surgeon in the Pediatric Surgery Service who Plaintiff alleges is similarly situated to Plaintiff but who received greater compensation for doing work equal to that of Plaintiff). In other words, she contends that the requested documents are relevant to show that Defendants' stated reasons for taking action against her, i.e., her alleged disruptive behavior and patient care concerns, were pretextual. Plaintiff also contends that the financial information requested in First Request No. 36 is relevant with respect to her Title VII claim for punitive damages.

As noted above, relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[81] This is particularly true in employment discrimination cases such as this.[82] The Court finds that Plaintiff has sufficiently demonstrated that the financial documents sought by First Requests No. 31 and 36 are relevant to her claim of pretext.

The Court also finds the documents sought in First Request No. 36 are relevant with respect to Plaintiff's claim for punitive damages. It is well settled that when a plaintiff alleges sufficient facts to claim punitive damages against a defendant, information regarding the defendant's net worth or financial condition is relevant because it can be considered in determining the amount of such damages.[83] This same rule applies to claims for punitive damages brought under Title VII.[84] Plaintiff has alleged sufficient facts in her Second Amended Complaint to assert a Title VII claim for punitive damages against the Hospital Authority. Furthermore, the Hospital Authority has made no showing that Plaintiffs' punitive damage claim is spurious. Thus, the Court concludes that the financial documents sought in First Request No. 36 are relevant to Plaintiff's claim for punitive damages.

Notwithstanding the above, the Court finds that the time frame covered by First Request No. 36 is exceeds the bounds or relevancy. Plaintiff seeks financial documents for the period January 1, 1998 through the present. Plaintiff does not explain why the financial information is needed for as far back as 1998, and the Court fails to see how financial information for such an extended time period would be relevant. The Court will therefore limit the time period to the period March 1, 2002 to the present. This provides Plaintiff with financial information relevant to her punitive damages claim for a two-year period. It also covers the time

81. *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 670 (D.Kan.2003); *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001).

82. *See Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir.1995) (scope of discovery in Title VII cases is extremely broad).

83. *Aerotech Res., Inc. v. Dodson Aviation, Inc.,* No. 00–2099–CM, 2001 WL 395397, at *2 (D.Kan. Apr.11, 2001) (holding discovery of defendant's financial information relevant to punitive damages claim); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. 94–2395–GTV, 1995 WL 625962, *3 (D.Kan. Oct.5, 1995) (same).

84. *See, e.g., Horizon Holdings,* 209 F.R.D. at 216 & n. 7 (finding plaintiff's request for financial information in a retaliation and pregnancy and sex discrimination action relevant to issue of punitive damages).

period during which Dr. Schropp was employed by KUSA.[85]

In light of the above, the Court overrules the Hospital Defendants' objections to First Requests No. 32 and 36, with the exception that the Court will limit the time period covered by First Request No. 36 to the period March 1, 2002 to the present. Within *twenty (20) days* of the date of filing of this Order, the Hospital Defendants shall produce the requested documents and provide a supplemental written response to First Request No. 32 and 36 (as limited herein).

### 12. First Interrogatory No. 21

In this interrogatory, Plaintiff seeks information regarding the Hospital Authority's computer and e-mail systems. The Hospital Authority asserted numerous objections in its response: overbreadth, relevance, vagueness, excessive subparts, and undue burden, and otherwise provided no response. The Hospital Authority, however, supplemented its response at the same time it responded to the Motion to Compel, and provided Plaintiff with a very brief and general response. In its response to the Motion to Compel, the Hospital Authority does not discuss its objections but only states that it has amended its response "to provide this information."[86] The Hospital Authority apparently believes that it has fully responded to the interrogatory.

Plaintiff argues in her reply that the information the Hospital Authority provided in its supplemental response is not fully responsive to the interrogatory. The Court agrees. The Court also finds that the Hospital Authority abandoned its objections to the interrogatory by not reasserting or discussing them in its response to the Motion to Compel. The Court therefore grants the Motion to Compel, and the Hospital Authority shall provide a complete and full response to First Interrogatory No. 21 within *twenty (20) days* of the date of filing of this Order.

### 13. Failure to attest to supplemental interrogatory responses

As noted above, the Hospital Authority provided supplemental responses to Plaintiff's First Interrogatories at the time it responded to the Motion to Compel.[87] Those supplemental responses were signed only by counsel for the Hospital Defendants. Plaintiff seeks an order requiring "each of the Hospital Defendants to submit a sworn statement that they adopt all supplemental responses contained in the Hospital Defendants' Opposition."

Federal Rule of Civil Procedure 33(b) states that all interrogatory answers (regardless of whether initial or supplemental) are to be signed in writing under oath.[88] The Rule further states that "[t]he answers are to be signed by the person making them, and the objections signed by the attorney making them." [89]

As the Hospital Authority's supplemental responses contained supplemental *answers* and not just *objections*, "the person answering them" should have signed them under oath. Thus, Plaintiff is correct in asserting that she is entitled to receive sworn answers. Plaintiff, however, is not entitled to an order requiring "each of the Hospital Defendants" to submit sworn statements that they are adopting the supplemental answers. Plaintiff's interrogatories were served only on the *Hospital Authority,* and not the *Individual* Hospital Defendants. Thus, the supplemental interrogatories should have been signed, under oath, by a representative of the Hospital Authority, and the Court will require the Hospital Authority to provide sworn answers. On the other hand, there is no basis for the Court to order "each of the Hospital Defendants" to submit sworn statements that they adopt the supplemental answers, as the *Indi-*

---

85. See discussion in part II.C.2, *infra,* regarding KUSA's objection to the time period covered by First Request No. 36.

86. Hosp. Defs.' Resp. to Mot. to Compel (doc. 123) at p. 19.

87. The supplemental interrogatory responses were attached as Exhibit A to the Hospital Defendants' response brief (doc. 123).

88. Fed.R.Civ.P. 33(b)(1).

89. Fed.R.Civ.P. 33(b)(2).

*vidual* Hospital Defendants were never served with these interrogatories. The Hospital Authority shall provide the appropriate signature page for the its supplemental interrogatory answers within *twenty (20) days* of the date of filing of this Order.

### 14. Sanctions against the Hospital Defendants

■ Plaintiff seeks to recover sanctions against the Hospital Defendants in the form of the expenses and attorney fees she incurred in bringing the Motion to Compel. Federal Rule of Civil Procedure 37(a)(4)(C) allows a court to impose sanctions where a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." [90]

In this case, the Court has overruled most of the Hospital Defendants' objections, many of which the Court finds were not substantially justified. The Court thus deems it just and appropriate to allow Plaintiff to recover a portion, if not all, of the reasonable expenses and attorney fees that she incurred in bringing the Motion to Compel against the Hospital Defendants. [91]

To aid the Court is determining the proper amount of expenses, Plaintiff shall file, within *twenty (20) days* of the date of filing of this Order, a pleading in which she sets forth the amount of expenses that Plaintiff seeks to recover against the Hospital Defendants and an affidavit itemizing the expenses, including attorney fees, that Plaintiff incurred in bringing this Motion to Compel against the Hospital Defendants. The Hospital Defendants shall have *twenty (20) days* thereafter to file a response. The Court will then issue a second order, apportioning the expenses and fees and specifying the amount and time of payment.

### C. Compelling Responses from KUSA

Plaintiff seeks an order compelling KUSA to respond to certain requests for production and interrogatories. It also requests an order requiring KUSA to provide a privilege log.

#### 1. First Request for Production No. 32

As discussed above, First Request No. 32 seeks all documents that relate to or concern the potential closing of the Hospital's Pediatric Surgery Service, including the stated intention of Defendants to close the Service unless Plaintiff left the Hospital by October 1, 2002. In its response, KUSA stated: "This request is not directed to Defendant KUSA. Because this request is directed to another Defendant, KUSA makes no response."

In its response to the Motion to Compel, KUSA does not reiterate or address this objection. Instead, KUSA asserts that the request seeks irrelevant information, and it argues that (1) Plaintiff has not made a showing that her claim for punitive damages "has any foundation," [92] and (2) the facts do not support Plaintiff's "conspiracy theory." [93]

As noted above in part II.B.4.a, a court will consider only those objections that have been timely asserted in the initial response to the discovery request and subsequently reasserted and relied upon in response to the motion to compel. [94] The court will deem objections initially raised but not relied upon in response to the motion to compel as abandoned. [95] The Court therefore rules that KUSA has abandoned its objection that the request is not directed to it.

---

90. Fed.R.Civ.P. 37(a)(4)(C).

91. In the absence of any evidence indicating that the Hospital Defendants themselves were responsible for the sanctionable conduct, the Court will impose the sanctions against their counsel. *See McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 697 (D.Kan.2000).

92. KUSA Resp. to Mot. to Compel (doc. 114) at p. 6.

93. *Id.* at p. 7.

94. *See Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999).

95. *Id.; Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* No. 01–2193–JWL, 2002 WL 1162421, at *1, n. 1

The Court will now turn to the new objections that KUSA asserts to First Request No. 32, i.e.., those objections that KUSA raises for the first time in its response to the Motion to Compel regarding Plaintiff's alleged failure to lay a foundation for her punitive damages claim and lack of facts to support her "conspiracy theory." When a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the Court will deem the objection waived.[96] As KUSA did not raise these objections in its initial response to the request and waited until responding to the Motion to Compel to assert them, the Court must deem them waived. Accordingly, the Court will grant he Motion to Compel as to First Request No. 32. KUSA shall provide a supplemental written response to this request and shall produce all documents responsive to it within **twenty (20) days** of the date of filing this Order.

### 2. First Request for Production No. 36

As also discussed above with respect to the Hospital Defendants, First Request No. 36 seeks Defendants' annual reports, balance sheets, financial statements for the period of January 1, 1998 to the present. KUSA objected to this request on grounds that it (1) seeks irrelevant information; (2) is not reasonably calculated to lead to the discovery of admissible evidence; and (3) "violates the Limitations on Discovery set forth in Rule 26(b)(2), Fed.R.Civ.P."

The Court overrules KUSA's objection that this request "violates the Limitations on Discovery set forth in Rule 26(b)(2)." Pursuant to that rule, a court may limit the number of requests for production if the court determines that (1) the discovery is unreasonably cumulative or obtainable from some other source that is less burdensome or less expensive, (2) the party seeking the discovery has already had ample opportunity to obtain the information sought, or (3) the burden or expense of the discovery outweighs its likely benefit.[97] KUSA does not explain or demonstrate any Rule 26(b)(2) basis for objecting to this request. The Court will therefore overrule this objection.

The Court will next address KUSA' relevancy and not calculated to lead to the discovery of admissible evidence objections. As discussed in detail in part II.B.11 with respect to the Hospital Defendants, the Court finds that this financial information is relevant to Plaintiff's claim that Defendants' stated reasons for taking action against her were pretextual. The court also finds it relevant to her claim for punitive damages under Title VII. The Court rejects KUSA's relevancy argument that Plaintiff has failed to establish a sufficient foundation for her punitive damages claim that would allow her to discover this financial information at this stage of the litigation. This Court has held that the party seeking discovery need not establish a prima facie case on the issue of punitive damages before it may obtain pretrial discovery of the other party's financial statements and other financial information.[98] Plaintiff has alleged sufficient facts to assert a claim for punitive damages against KUSA under Title VII, and KUSA has made no showing that Plaintiffs' punitive damage claim is spurious. Accordingly, the Court overrules these objections.

KUSA indicates in its response to the Motion to Compel that in the event the Court orders KUSA to produce financial information in response to this request, the request should be limited to the time period March 1, 2002 to the present, rather than the time period set forth in the request, i.e., January 1, 1998 to the present. KUSA also asks that the request be limited to financial information regarding "the Section of Pediatric Surgery" rather than KUSA as a whole. The Court will construe these to be relevancy objections, and will consider them. The Court rejects KUSA's contention that only financial information about the Pediatric Surgery Section is relevant. Plaintiff has sued KUSA and her claim for punitive damages is

---

96. *Cotracom,* 189 F.R.D. at 662.

97. Fed.R.Civ.P. 26(b)(2).

98. *Horizon Holdings,* 209 F.R.D. at 216 (D.Kan. 2002); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 152 (D.Kan. 1990).

asserted against KUSA, not the Pediatric Surgery Section of KUSA. Thus, the request should not be limited solely to the Pediatric Surgery Section. With respect to the time period covered, KUSA argues that the requested financial documents should be provided only as far back as March 1, 2002, the date that Dr. Schropp began working for KUSA. KUSA argues that this is the only relevant time period, as Plaintiff is claiming that KUSA violated the Equal Pay Act by paying Dr. Schropp more than Plaintiff. Plaintiff does not explain why the financial information is needed for as far back as 1998, and the Court fails to see how financial information for such an extended time period would be relevant. The Court will therefore sustain this objection.

In sum, the Court will grant the Motion to Compel as First Request No. 36; however, the Court will limit the time period to March 1, 2002 through the present. KUSA shall provide a supplemental written response to this request and produce all documents responsive to it within *twenty (20) days* of the date of filing of this Order.

### 3. Privilege log

Plaintiff also moves for an order compelling KUSA to revise its privilege log. Plaintiff asserts that the privilege log is deficient in three respects. First, the log identifies only two documents, even though, according to Plaintiff, KUSA's general objections imply that a much larger number of documents have been withheld on the basis of privilege. Second, the privilege log does not address any of the information that KUSA has redacted. Plaintiff contends that any information that KUSA has redacted on the basis of privilege should be identified in KUSA's privilege log. Third, with respect to the two documents that are listed in the log, KUSA has failed to identify the specific document requests and/or interrogatories to which the documents are responsive.

Accordingly, Plaintiff moves for an order compelling KUSA to provide a privilege log that contains all documents and information it has withheld, include any redactions, on the basis of the attorney-client privilege and

work product immunity. Plaintiff also seeks an order requiring KUSA to identify in the privilege log the specific interrogatories or document requests to which the listed documents are responsive.

The Court will address each of these issues in detail below.

#### a. Failure to include all privileged documents in the log

Plaintiff first asserts that she is entitled to an order compelling KUSA to supplement its privilege log so as to identify *all* documents that it has withheld on the basis of privilege. Plaintiff contends that although the privilege log only lists two documents, "KUSA's general objections imply that a larger number of documents were withheld on the basis of privilege." [99] The Court notes that KUSA does make a general objection to both the interrogatories and requests for production, objecting to them "to the extent" that the request information or identification of documents that is protected the attorney-client privilege or work product doctrine. KUSA also objects to Interrogatory No. 1 "to the extent" it seeks information protected by the work product doctrine and attorney-client privilege. KUSA, however, represents in its response to the Motion to Compel that the only documents it has withheld on the basis of privilege or work product immunity are those two documents identified in its privilege log. Without more, the Court has no basis to conclude that KUSA has withheld any additional documents and has no reason to compel KUSA to identify any other documents in its privilege log. The Court will therefore deny the Motion to Compel as to this issue.

#### b. Failure to identify redacted information in the log

Plaintiff seeks an order compelling KUSA to identify in its privilege log the information that has been redacted from certain documents. Plaintiff also seeks an order compelling KUSA to provide a list to Plaintiff of all documents that KUSA has produced which contain redactions.

---

**99.** Pl.'s Mot. to Compel (doc. 101) at p. 58.

The parties agree that KUSA has produced the following documents but with portions redacted: Doc. Nos. 000418, 000420–21, 000431–433, 000443, and 000439. Plaintiff has apparently been proceeding under the assumption that KUSA redacted portions of these documents based on a claim of privilege. Plaintiff thus argues that KUSA should be required to identify this redacted information in its privilege log. KUSA, however, concedes in its response to the Motion to Compel that the information was redacted because of confidentiality concerns and not because it was privileged. KUSA explains that it redacted portions of these documents because they "concern confidential and private information regarding surgeons that are not, and have never been, part of the pediatric surgery section and are not at issue in this lawsuit."[100] KUSA argues that these surgeons do not practice in pediatrics, but in other specialties such as neurology and plastic surgery. Thus, KUSA contends that theses surgeons are not similarly situated to Plaintiff and that Plaintiff is not entitled to this information. Plaintiff counters that these surgeons are indeed similarly situated to her because, like Plaintiff, these surgeons had their compensation set by KUSA and Dr. Cheung. The Court agrees with Plaintiff and finds this information to be potentially relevant to her Equal Pay Act claim. KUSA may protect the confidentiality of these documents under the Stipulated Protective Order that is already in place in this case.

Plaintiff also asserts that she is entitled to a list of all documents that KUSA has produced which contain redactions. Plaintiff was apparently only aware of the above-referenced documents being redacted. KUSA, however, indicated in its response to the Motion to Compel that an additional document, i.e., Doc. No. 000438, was also redacted.

The Court agrees that Plaintiff is entitled to receive from KUSA a complete list of all documents that KUSA has produced to Plaintiff which have been redacted. The list shall identify the following for each document redacted: (1) the document number, (2) the number of the request or interrogatory that it was produced in response to, and (3) the basis for the redaction. KUSA shall provide such a list to Plaintiff within **twenty (20) days** of the date of filing of this Order. If Plaintiff disputes the need for redaction, Plaintiff shall attempt to confer with KUSA in an attempt to resolve the dispute, and shall do so within **ten (10) days** of receiving the list. Plaintiff shall have **ten (10) days** thereafter to file a motion to compel, if necessary.

#### c. Failure to identify the interrogatories or requests

Next, Plaintiff asserts that KUSA should be compelled to identify the particular interrogatories or document requests to which the claimed privileged documents are responsive. Plaintiff notes that without such identifying information it is difficult for Plaintiff to determine whether the privilege or work product immunity actually applies. The Court agrees that Plaintiff is entitled to this information, and will therefore order KUSA to provide an amended privilege log containing this information. Said amended privilege log shall be served on Plaintiff within **twenty (20) days** of the date of filing of this Order.

The Court notes that KUSA's privilege log is entirely inadequate in other respects, in that it fails to identify the date the document was prepared, the person who prepared the document, the person for whom the document was prepared, the person to whom the document was directed, the purpose of preparing the document, and the number of pages. It is well settled that this information must be provided in a privilege log, as the requesting party (and, in some instances, the Court) must have sufficient information to enable it to determine whether each element of the privilege or work product immunity has been satisfied.[101] As

---

**100.** KUSA Resp. to Mot. to Compel (doc. 114) at p. 5.

**101.** *See, e.g., Goodyear Tire & Rubber, Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.,* 211 F.R.D. 658, 661–62 (D.Kan.2003) (setting forth minimum requirements for privilege log); *Stewart v. Mitchell Transport,* No. 01–2546–JWL, 2002 WL 1558210, at *2 (D.Kan. July 8, 2002) (same).

Plaintiff has not raised these deficiencies in her Motion to Compel, however, the Court will not require KUSA to supplement its privilege log to include this information. However, the Court cautions KUSA (and the other parties) that any other privilege logs that the parties may provide in this case should comply with these rules.

### 4. Sanctions against KUSA

Plaintiff seeks to recover sanctions against KUSA pursuant to Federal Rule of Civil Procedure 37(a)(4). As discussed above in part II.B.14, when a motion to compel is granted in part and denied in part, the Court may apportion the reasonable expenses incurred in connection with the motion " among the parties and persons in a just manner." [102]

In this case, the Court has overruled many of KUSA's objections, some of which the Court finds were not substantially justified. The Court thus deems it just to allow Plaintiff to recover a portion, if not all, of the reasonable expenses, including attorney fees, that she incurred in bringing the Motion to Compel against KUSA.[103]

To aid the Court is determining the proper amount of expenses, Plaintiff's attorneys shall file, within **twenty (20) days** of the date of filing of this Order, a pleading in which Plaintiff sets forth the amount of expenses that Plaintiff seeks to recover against KUSA and an affidavit itemizing the expenses, including attorney fees, that Plaintiff incurred in bringing this Motion to Compel against KUSA. KUSA shall have **twenty (20) days** thereafter to respond. The Court will then issue a second order, apportioning the expenses and fees and specifying the amount and time of payment.

### D. Dr. Atkinson

■ The caption of Plaintiff's Motion to Compel indicates that it is filed "against all Defendants." It was also docketed by Plaintiff's counsel as a "Motion to Compel Against

all Defendants." [104] The Motion, however, seeks no relief against Defendant Barbara Atkinson, M.D.

Dr. Atkinson has filed a brief in opposition to the Motion, indicating that the Motion does not apply to her and stating that Plaintiff had not served any discovery requests on her at the time the Motion to Compel was filed. Dr. Atkinson complains that Plaintiff's counsel never conferred with her counsel prior to filing the Motion to Compel, as required by D. Kan. Rule 37.2, and that had Plaintiff's counsel done so, the Motion would not have been filed against "all" Defendants. Dr. Atkinson seeks to recover the attorney fees and expenses she incurred in filing her opposition to the Motion to Compel.

Plaintiff replies that it was Dr. Atkinson's counsel who violated D. Kan. Rule 37.2 by failing to confer with Plaintiff's counsel prior to filing her opposition to the Motion to Compel. Plaintiff asserts that had Dr. Atkinson's counsel done so, her counsel would have learned that the Motion to Compel was not intended to be filed against her and there would have been no need for her to file any type of opposition.

D. Kan. Rule 37.2 provides that the Court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R.Civ.P. 37, i.e., a motion to compel, until counsel for the moving party has conferred or made a reasonable effort to confer with opposing counsel. Thus, the Rule applies to *motions* to compel, not to *responses* to the motions. Accordingly, D. Kan. Rule 37.2 did not require Dr. Atkinson's counsel to confer with Plaintiff's counsel prior to filing her opposition brief. The Rule did, however, require Plaintiff's counsel to confer with Dr. Atkinson's counsel prior to filing the Motion to Compel—at least to the extent that Plaintiff intended to file such a motion against Dr. Atkinson. It is clear to the Court, however, that Plaintiff did not intend to include Dr. Atkinson in the Motion to Compel. It appears to be an inadvertent error that the

---

**102.** Fed.R.Civ.P. 37(a)(4)(C).

**103.** In the absence of any evidence indicating that KUSA itself was responsible for the sanctionable conduct, the Court will impose the sanc-

tions against KUSA's counsel. *See McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 697 (D.Kan.2000).

**104.** *See* Docket Entry 101.

caption of the Motion indicated it was being filed against "all" Defendants.

It is apparent to the Court that had Dr. Atkinson's counsel, who knew that no discovery requests had been served on his client, contacted Plaintiff's counsel, the confusion would have been cleared up and Dr. Atkinson could have been spared the expense of preparing an opposition brief. Certainly, that would have been the reasonable and preferable course of action for Dr. Atkinson's counsel to take.

In light of the above, the Court finds no basis to impose sanctions against Plaintiff, and the Court will deny Dr. Atkinson's request for sanctions.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel (doc. 101) is denied as to Defendants Laurence Y. Cheung, M.D., and the University of Kansas, and said Defendants' request for sanctions against Plaintiff is granted as set forth herein.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel (doc. 101) is granted in part and denied in part as to the University of Kansas Hospital Authority; H. William Barkman, Jr., M.D.; Irene M. Cumming; Robert Page–Adams; and Kurt P. Schropp, M.D., and Plaintiff's request for sanctions against said Defendants is granted as set forth herein.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel (doc. 101) is granted in part and denied in part as to Defendant Kansas University Surgery Association, and Plaintiff's request for sanctions against said Defendant is granted as set forth herein.

IT IS FURTHER ORDERED that the parties shall follow the briefing schedule set forth herein regarding the amount of sanctions to be awarded.

IT IS FURTHER ORDERED that Barbara Atkinson, M.D.'s request for sanctions (doc. 110) is denied.

IT IS FURTHER ORDERED that all documents required to be produced as a result of this Order shall be produced within *twenty (20) days* of the date of filing of this Order. Said production shall take place at the offices of Plaintiff's local counsel or at any other location agreed upon by the parties.

IT IS FURTHER ORDERED that all written answers to requests for production and interrogatories required to be supplemented or amended as a result of this Order and all privilege logs required to be supplemented or amended as a result of this Order shall be served within *twenty (20) days* of the date of filing of this Order.

IT IS SO ORDERED.